MOSES HAMILTON and others *v.* JOHN McPHERSON and others.

Damages for breaches of contract are only those which are incidental to, and directly caused by, the breach, and may reasonably be presumed to have entered into the contemplation of the parties; and not speculative profits, or accidental or consequential losses.

The law imposes upon a party subjected to injury from a breach of contract by the other party, the active duty of making reasonable exertions to render the injury as light as possible. And if the injured party, through negligence or willfulness, allows the damages to be unnecessarily enhanced, the increased loss justly falls upon him.

In an action against common carriers, to recover damages for an injury to a quantity of oats caused by their heating and becoming mouldy in consequence of the failure of the defendants to transport them from Canada, where they were in store, to Oswego, within the time required by their contract, it appearing that notwithstanding the delay of the defendants, the oats would not have been injured had they been properly cared for by the custodians thereof, by handling over or stirring them; *it was held* that the duty of taking care of the grain rested upon the plaintiffs, or their agents the custodians thereof, and not upon the defendants; no responsibility, in this respect, attaching to the latter until they took possession of the property. And that they were not answerable for the damages which resulted from the failure to bestow the necessary care.

THIS was an action against the defendants as common carriers, in which the plaintiffs claimed damages for injury

to a quantity of oats, caused by their heating and becoming mouldy, during the months of June and July, 1851, in consequence of the failure of the defendants to transport them from Perth, in Canada, to Oswego, within the time required by their contract.   There were two counts in the complaint, in one of which it was alleged that the defendants engaged to deliver the oats at Oswego in the month of May, at five cents per bushel, freight; and in the other that they engaged to deliver for the same amount of freight, without fixing any time of delivery.   In addition to damages for the injury to the oats, the plaintiffs also claimed damages for the expense of taking care of them after their arrival, and for loss of profits by the fall in price of oats during the delay.

The defendants by their answer denied the facts alleged in the complaint, and stated that the injury to the oats occurred before they came to the defendants' possession, and before the time arrived for their transportation.

On the trial at the Oswego circuit in February, 1858, the plaintiffs proved by a correspondence between their agents, Colver, Rathbun & Co., and the defendants, commencing March 18, and ending April 3, 1851, a contract to carry the oats and other grain, amounting to thirty thousand or forty thousand bushels, from different places in Canada named in the correspondence, to Oswego, at five cents per bushel, but no time was fixed for their delivery.   Orders for the delivery of the grain were sent to them, and it appeared to have been delivered satisfactorily, excepting a lot of about four thousand four hundred bushels of oats which were at Perth, in the store house of McDonald & Hall.   No order for the delivery of those oats were sent to the defendants until the 24th of May, when Colver, Rathbun & Co. wrote to them, complaining of the delay in delivering the property of other persons, and inclosing an order on McDonald & Hall for the oats in their possession, and saying, "please advise us if you will send down for the oats without delay."   This letter was answered by the defendants on the 27th of May, when they

said, ".The cargo of oats from Perth shall be sent for on the return of our boats, that started for Mr. Hooker's oats at that place last evening, probably the close of this week."

The oats failing to come forward, the defendants were written to again on the 24th of June, as follows: "The owners of the oats got at Perth, of McDonald & Hall, are very desirous of having them brought forward at once. You will be so kind as to have them started (if not done so) at once, or as soon as practicable." On the next day the defendants answered, "We were not aware that all the oats had not come from Perth, and now dispatch a steamer with three barges to Pike Falls, with instructions to take all the freight they can find at Perth."

The defendants were again written to on the 28th of June as follows: "We have received from McDonald & Hall, of Perth, notice that they are very desirous that the oats, some three thousand or four thousand bushels, should be removed at once, as they say great danger is apprehended that the oats will take injury by leaving so large a quantity together at this season. Also, the owners or purchasers, Messrs. Sweet & Hamilton, complain that they want the oats badly, having sold them on contract and the price having fallen. They fear trouble and loss for want of them before.

We find by reference that we sent you an order on the 24th of May for their oats; that we have your reply that they should come forward at once. If any damage, the parties will look to you for it. We have done our duty here, fully."

The defendants answered this letter on the first day of July as follows: "We beg to inform you, in reply to your letter of the 28th, that we never received an order from you on Messrs. McDonald & Hall. We, however, sent them boats the instant we learned that you had not got all the oats you expected from Perth, and doubtless they will be here this week."

The oats were taken by the defendants' boats, from Mc-
Donald & Hall's store house at Perth, on the 2d, and deliv-
ered to Colver, Rathbun & Co., for the plaintiffs at Oswego,
on the 10th or 12th of July. They were heated, mouldy
and considerably damaged; the injury having occurred from
their remaining in the bins at Perth, during the hot weather
in June.

There was no negligence or unreasonable delay in deliver-
ing the oats, after the 27th of June, when the vessels started
from Kingston for that purpose. It was shown that oats
could be kept in bins through the summer without injury,
if they were properly cared for, but they required handling
over or stirring, to keep them from heating.

The judge charged the jury, that if they should find that
the oats became heated and damaged after the defendants
were bound to enter upon their contract, and they became
heated and damaged by reason of the delay, then they were
liable to respond in damages, and were liable to the extent
of such injury and damage. To this part of the charge the
defendants excepted.

The defendants' counsel requested the judge to charge that
the defendants were not liable to respond in damages for the
injury sustained by the oats while they were at Perth, and
before they came to the possession of the defendants. The
judge refused so to charge, but instructed the jury on this
point, "that the defendants were liable to respond for any
damage the oats sustained after the defendants should have
entered upon the performance of the contract." To the
refusal and to the charge on this point the defendants' coun-
sel excepted.

The jury found a verdict in favor of the plaintiffs for seven
hundred and thirty dollars, for which amount, with costs, a
judgment was entered against the defendants, which was
reversed on appeal by the defendants to the general term,
and a new trial ordered. From this judgment the plaintiffs
brought the present appeal, with a stipulation that if the

judgment appealed from shall be affirmed, judgment absolute may be entered against them.

*J. A. Hathaway,* for the appellants.

*Grant & Allen,* for the respondents.

SELDEN, J.  A good cause of action was shown on the part of the plaintiffs against the defendants, for neglecting to proceed with reasonable diligence in forwarding the oats after the notice which they received on the 27th of May, and the only question which the case presents relates to the amount of damages for which the defendants are responsible.

The rule applicable to such cases has been briefly and accurately stated by Mr. Powell, as follows :  " Damages for breaches of contract are only those which are incidental to, and directly caused by, the breach, and may reasonably be presumed to have entered into the contemplation of the parties; and not speculative profits, or accidental or consequential losses." (Powell on Ev. ch. 21, § 54, p. 216 ; *Hadley* v. *Baxendale,* 9 Wels. H. & G. 341; *Griffin* v. *Colver,* 16 N. Y. Rep. 494, 5 ; Code Nap. §§ 1150, 1151 ; Mayne on Dam. 15.) I think the instructions given to the jury in this case, which were excepted to, can not be reconciled to this rule.  The damages to the oats, from heating, were not "incidental to, or directly caused by," the delay in moving them.  The delay, if proper care had been bestowed upon the oats, would not have resulted in their injury.  The direct cause of injury, therefore, was the want of care.  The necessity for extra care arose from the delay, and the expenses attending such necessary care, if it had been bestowed, would have been the direct result of the defendants' breach of contract.  For such expenses they would have been answerable, but were not answerable for the damages which *resulted from the failure to bestow that care.*  The law, for wise reasons, imposes upon a party subjected to injury from a breach of contract the

active duty of making reasonable exertions to render the injury as light as possible. Public interest and sound morality accord with the law in demanding this; and if the injured party, through negligence or willfulness, allows the damages to be unnecessarily enhanced, the increased loss justly falls upon him. (*Miller* v. *Mariners' Church*, 7 Greenleaf, 51; *Shannon* v. *Comstock*, 21 Wend. 461; *Heckscher* v. *McCrea*, 24 id. 309; *Clark* v. *Marsiglia*, 1 Denio, 317; *Spencer* v. *Halstead*, Id. 606; *Loker* v. *Damon*, 17 Pick. 284.)

If the injury to the oats had been the *necessary* consequence of the delay, and the contract had been entered into by the defendants in view of that consequence, in case of their failure in performance, (*Hadley* v. *Baxendale*, 9 Exch. *supra*,) they would have been responsible for such injury, because it would have been the *direct result* of their breach of contract. The case then would have been parallel to that of the failure of a railroad company to take milk or vegetables to market, in accordance with previous contract, and other like cases suggested by Mr. Justice MULLEN in his dissenting opinion in this case. In such cases, however, the injured parties could recover nothing for damages, which, by reasonable diligence on their part, could have been prevented. (*Miller* v. *Mariners' Church*, *supra*.)

The burden of proving that the damages which have been sustained in such cases could have been prevented, unquestionably rests upon the party guilty of the breach of contract. (*Costigan* v. *The M. & H. R. R. Co.*, 2 Denio, 609.) As I understand the case, such proof was made by the defendants here; but whether the fact was conclusively proved or not, there was sufficient evidence to call for the submission of that question to the jury, which was taken from their consideration by the positive instruction of the judge, that the defendants "were liable to respond for any damage the oats sustained after the defendants should have entered upon the performance of the contract."

It is not material to inquire whether the duty of taking care of the oats rested upon the plaintiffs, who were the owners, or upon McDonald & Hall, who were the custodians of them. It is sufficient for the present case that it rested upon one or the other, and not upon the defendants. No responsibility in this respect attached to the defendants, until they took possession of the property.

The judgment of the special term was properly reversed, and final judgment must be rendered against the plaintiffs, in pursuance of their stipulation.

DENIO, Ch. J. and DAVIES, WRIGHT, EMOTT and MARVIN, Justices, concurring,

Ordered accordingly.