THE MAYOR, &c., OF THE CITY OF TROY, *v.* THE TROY AND LANSINGBURGH RAILROAD COMPANY.

(GENERAL TERM, THIRD DEPARTMENT, OCTOBER, 1870.)

The defendant, a horse railroad company, accepted from the city of Troy a license to construct and operate its road upon the streets of the city, by which it was required "to keep in repair the pavement between the tracks and for a distance of eighteen inches outside of each track, and to cause the snow to be removed so as to afford a safe and unobstructed passage to sleighs and wagons; the repairs and removal of snow to be done to the satisfaction of the city commissioner," and, in default thereof, the license granted might be terminated by the common council, if they should deem it proper. The license contained, also, a provision, that the defendant should fully indemnify and save the city harmless from any and all claims or damages for which it might be made or become liable, or compelled to pay, "by reason of the construction or working of the road, or of the giving or allowing of the licenses, rights and privi-

The Mayor *v.* The Troy and Lansingburgh Railroad Company.

leges hereby granted." The defendant neglected to remove the snow from the outside of its track; and P., a passenger, who had received injuries by the upsetting of a stage-sleigh caused by the neglect, sued the plaintiff for damages. The latter notified the defendant of the suit; but it declined to defend. The plaintiff defended, but judgment went against it for the damages claimed.—*Held*, that the defendant was liable in an action to recover the amount of the judgment.

*Held*, further, that the court did not err upon the trial in holding "that the judgment recovered against the plaintiff was competent evidence against the defendant, and an estoppel, except as to the question whether the injury to P. did or did not happen by the act or omission of the defendant."

Nor in holding "that the defendant was liable, if it excavated its track carefully and skillfully, and yet left the street in an unsafe condition by reason of its going down too low, so as to interfere with proper sleighing and to cause the injury, and although it left on the east side a safe and commodious passage."

Nor in refusing to instruct the jury, "that, if the city officers negligently omitted their duty in keeping the street in condition, and thereby contributed to the injury, the plaintiff could not recover."

Nor in holding that the plaintiff was entitled to the amount of the judgment recovered and interest.

APPEAL from order denying a new trial, and exceptions ordered to be first heard at General Term.

The cause was tried before Mr. Justice PECKHAM and a jury, at the Rensselaer Circuit, in February, 1870. The action was brought for the recovery of the amount paid by the authorities of the city of Troy upon a judgment recovered against it by one Nathaniel Purdy, for damages sustained by the overturning of a stage-sleigh, on which he was a passenger, and alleged to have been caused by the defendant. The complaint alleged that, in February, 1862, the defendants unlawfully, wrongfully, carelessly and negligently accumulated and heaped up, and allowed and permitted to become accumulated and heaped up, and to remain in and upon one of the public streets and highways of the city of Troy, known as River street, and being one of the streets mentioned in a permission and license (sufficiently set forth in the opinion), and in and through which the railroad was constructed and run, between Fulton and Grand Division streets, a large quantity of snow and ice; and allowed and made dangerous excavations by digging through

the ice and snow at that point, so as to render the street dangerous and unsafe; and that, in consequence of this condition of the road, Nathaniel Purdy, while passing along in a lawful manner in a sleigh, was precipitated into the excavation, in February, 1862, and severely injured. That Purdy commenced an action against the city February 5th, 1863, a year after the accident, to recover for his injuries, and had judgment therein, &c.

It appeared, upon the trial, that, in August, 1860, the defendant applied to the plaintiffs for leave to construct a road through certain streets in Troy, which was granted upon conditions which were stated in an ordinance passed by the common council of the city of Troy, and referred to in the complaint. That on the 16th of October of the same year, the defendant formally accepted the license granted, and assumed the responsibilities imposed thereby. That the defendant constructed its road and operated the same at the time of the injuries received by Purdy, in the winter of 1862. Proof was given to show, that, the snow being very deep, the company by throwing the snow from the track of the road and on to each side of the road, and by the depth of digging and the high elevation made on each side of the track, caused obstructions in the street which occasioned the injury complained of. It also appeared that the excavation of the snow from the track, left on each side of the same a passage for ordinary vehicles, considerably elevated, and that the driver of the sleigh passed from the east side upon the track, when the sleigh was overturned.

That the plaintiff gave the defendant notice that the action of Purdy was brought against the city, and requested it to defend, but the defendant declined. That the plaintiff defended; and on the 24th of May, 1865, Purdy recovered judgment for damages $3,500, and costs $325. That execution was issued, and on the 31st day of July, 1865, after requesting the defendant to pay the judgment, and its refusal, the plaintiff paid the same, with costs and counsel fees. The judgment recovered by Purdy was offered and received in

evidence, and the court held it conclusive as to the extent of the damages and the negligence of the driver of the sleigh; to which rulings exceptions were duly taken. The court made other decisions, which are stated sufficiently in the opinion, and to which, exceptions were taken. The jury rendered a verdict in favor of the plaintiff for $6,181.99.

A motion was made for a new trial on the minutes, which was denied. An appeal was taken from the order denying a new trial, and a bill of exceptions was made, which was ordered to be heard first at General Term.

*W. A. Beach*, for the appellant.

*M. I. Townsend*, for the plaintiff.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. The right of the plaintiff to recover in this action depends mainly, I think, upon the construction to be placed upon the license granted to the defendant to construct its road in the city of Troy by the common council of that city, and the duties and obligations thereby assumed by the defendant. By the fourth section of the ordinance of the common council, the defendant is required to keep in repair the pavements between the track and for a distance of eighteen inches outside of each track, and to cause the snow to be removed, so as to afford a safe and unobstructed passage to sleighs and wagons; and that the repairs of the road and removal of snow shall be done to the satisfaction of the city commissioner; and declares that in default thereof the license hereby granted, &c., may be terminated by the common council, if they shall deem it proper.

I think that the true construction to be put upon the section cited is, that the defendant is bound to keep the pavements in repair for eighteen inches beyond the track and to remove the snow from the street, so as to afford a safe passage for sleighs and wagons. If it was intended to restrict the

removal of the snow to the limits named for the reparation
of the pavement, the subsequent provision in regard to the
passage of conveyances should have been inserted antecedent
to the words prescribing limits for the reparation of the pave-
ment.   As it follows the limitation made for the repairs, the
inference is inevitable that it was designed to embrace so much
and such portion of the street as would naturally and neces-
sarily be obstructed by the snow in the vicinity of the rail-
road tracks in consequence of its construction.   This interpre-
tation is reasonable and practical; for if the snow was only
to be removed eighteen inches each side of the track, it
might be piled up upon such a line to an extent that would
cause great inconvenience and produce a serious obstruction
to travelers.   This would not furnish a safe and unobstructed
passage, as was evidently intended, and answer the pur-
pose which was designed to be accomplished.

The provision at the close of the section of the ordinance
referred to, which declares that in case of a default to comply
with its terms, the license granted may be terminated, is not
in the nature of a penalty for a neglect of duty, which pre-
cludes a recovery by the city authorities for liabilities incurred
by them.   This is a forfeiture which may be enforced for an
omission of duty ; but it does not prevent a recovery for dam-
ages sustained, or for money paid by reason of the negligence
of the defendant in complying with the terms and conditions
upon which the license was granted.   The infliction of a
penalty does not necessarily interfere with any other liability
incurred.

But even if there was any rational ground for hesitation in
this respect, I think it is removed by the provision in the
sixth section of the ordinance, which provides that the defend-
ant "shall fully indemnify and save harmless the city of
Troy," and "for any and all claims or damages for which
the city may be made or become liable or compelled to pay
by reason of the construction or working of said road, or of
the giving or allowing of the licenses, rights and privileges
granted."   I am inclined to think that the damages incurred

did arise in consequence of the construction or working of the road, as they would not have been incurred if it had not been constructed or worked. But if this construction is erroneous, it cannot very well be doubted that they would not have arisen if the license conferring the rights and privileges enjoyed and bestowed had not been given. Whether this provision be considered as a covenant or a condition, the license was accepted on these terms by the defendant, who thereby assumed to take charge of the street where the railroad was, and to indemnify and save harmless the city of Troy from any injuries resulting from its construction and operation. The terms and conditions upon which the defendant accepted the grant, and the privileges thereby conferred, are broad and comprehensive, and made the defendant an indemnitor against all damages which might flow from it. The defendant being bound to indemnify upon being notified that the suit was brought against the city, was also obligated to defend the suit or to abide the consequences of a judgment against them, which binds the indemnitor when the latter is notified to defend and fails to do so. (1 Johns., 517; 6 Johns., 158; 7 Johns., 168; 4 Cow., 340; 12 Wend., 309.) Several of the foregoing cases hold that if the indemnitors, being requested to defend, refuse to do so, the judgment is conclusive against them. (1 Johns., 6 Johns., and 7 Johns., *supra*.) Unless there is an allegation of fraud in the conduct of the action, the amount recovered is held to be conclusive. (*Rapalye* v. *Prince* 4 Hill, 119). It follows from the remarks made, that the court committed no error in holding the judgment recovered against the plaintiff was competent evidence against the defendant, and an estoppel except as to the question whether the injury to Purdy did or did not happen by the act or omission of the defendant, which the court submitted to the jury.

Nor, in my opinion, was there any error committed by the court in holding that the defendant was liable if it excavated its track carefully and skillfully so far as regards their purpose, and yet left the street in an unsafe condition by reason of their going down too low, so as to interfere with proper

sleighing and to cause the injury, and although it left on the east side a safe and commodious passage. As already stated, the license under which the defendant had authority to act, rendered it liable for all damages which ensued from the construction and operation of the railroad, and not merely for " a safe and unobstructed passage ;" and this liability was incurred if the excavation was skillfully done, if the street was in an unsafe condition, and even although there were some safe places where a sleigh might be driven without being overturned.

Although the defendant had a right to remove the snow from the track, yet I think they are bound to do it in such a manner as not to render it unsafe to the traveling public. If it was dangerous and was the cause of the injury, then the defendant would be liable. Although, as a general rule, a party may not be responsible for the consequences of an act performed carefully and skillfully according to law ; yet in this case, where the party assumed and agreed to indemnify against injuries which might accrue by his act, he is liable for any act or omission which placed the street in the unsafe and dangerous condition and produced the consequences which followed. This was within the meaning of the obligation, which the defendant had undertaken to perform.

There was no error in the refusal of the judge to instruct the jury that, if the city officers negligently omitted their duty in keeping the street in condition, and thereby contributed to the injury, the plaintiff could not recover. The doctrine that a party, whose concurring negligence has contributed to produce the injury for which damages are sought to be recovered, cannot recover has no application to a case like this. The plaintiffs were lawfully bound to keep the street in repair, and were liable for any injuries which occurred by reason of their neglect. In consideration of the use of the street for a lawful and proper purpose, the defendant assumed this duty, and agreed to indemnify the plaintiff. It failed to perform the obligation, and, by reason of it, the plaintiffs were damnified. They have clearly a right to compensation. This was the arrangement entered into between

The Mayor *v.* The Troy and Lansingburgh Railroad Company.

the parties; and it does not rest with the defendant to say, that, because the plaintiffs have failed to do what the defendant was solemnly bound to perform, the defendant is not liable for a failure to fulfill its contract. It must live up to the terms of the license by virtue of which it was permitted to enjoy the privileges granted, and cannot shelter itself from responsibility by reason of the plaintiffs' negligence.

I think that the court properly held that, if the plaintiffs were entitled to recover, the defendant was liable for the amount of the judgment recovered and interest, which they were obliged to pay. This was the injury caused by the failure of the defendant to protect the plaintiffs under the license given; and, as the plaintiffs were not bound to restore the street which the defendant had agreed to take care of, they were entitled to indemnity against any amount paid by reason of the defendant's neglect. This is not a case which required reasonable care and effort to limit or reduce the injury. (*Chase* v. *N. Y. Central R. R. Co.*, 24 Barb., 273; *Hamilton* v. *McPherson*, 28 N. Y., 72.) The plaintiffs were under no obligation to remove the obstructions; and, otherwise than this, there was no way of preventing the accident which produced the injury.

We are not authorized to say that the verdict was against the evidence; and there is no such want of testimony to uphold it as would justify a new trial.

There was no error upon the trial in any of the rulings made by the judge; and the order appealed from must be affirmed, and judgment ordered in favor of the plaintiffs, with costs.

POTTER and PARKER, JJ., concurred in the result of the foregoing opinion.

Judgment affirmed.