## N. Y. COMMON PLEAS.

### ELIZABETH FLYNN, by her guardian, respondent, agt. MARY F. HATTON, appellant.

The mere agreement of a landlord to *repair*, has reference only to the condition of the building or premises demised for the purpose of their profitable use, and the pecuniary benefit to be derived from their enjoyment or loss from being deprived of their use in such state of repair as the agreement intended.

Such a simple agreement or covenant, in no way contemplates any destruction of life or casualities to the person or property of any one, which might accidentally result from an omission to fulfil the agreement in every respect.

For the proposition that a landlord under contract (generally) to keep the premises in repair is for a breach thereof, also further liable to his tenant, *as in tort*, for wilful refusal or neglect to perform his obligation, no warrant is to be found in principle or authority.

His subsequent parol promise, after being notified of defects, to make necessary repairs, unless founded on a new consideration, superadds nothing to his original obligation, and furnishes no ground for awarding additional damages, except so far as the tenant is by such promise delayed and limited in making them (primarily) at his own expense.

A claim cannot exist on the part and behalf of sufferers from defects to a piazza appurtenant to a tenement house, occurring from natural causes—from natural wear and tear, in an action *for a tort or negligence* against the landlord, whose only obligation exists in contract with the tenant in possession, and one can only be founded on some other negligence, trespass or wilful breach of a direct public or private duty to the party injured.

In this case, *held*, that the negligence of the parents. in suffering the plaintiff, a child about three years of age, to wander upon this dilapidated piazza or balcony, and exposing it to danger and the injuries it received was so gross and unambigious as to constitute contributive negligence and should prevent a recovery by the plaintiff for damages for such injuries.

*General Term, July,* 1872.

*Before* DALY, *Ch. J.,* ROBINSON *and* LARREMORE, *JJ.*

APPEAL from a judgment rendered by the special term for the plaintiff.

ALBERT MATTHEWS, *for appellant; defendant.*

*First.* The negligence of her parents in allowing the infant plaintiff to expose herself to danger must be imputed to the infant, and forms such an element of contributive negligence as to bar her recovery (*Hartfield* agt. *Roper*, 21 *Wend.*, 615; *Brown* agt. *Maxwell*, 6 *Hill*, 592; *Krieg* agt. *Wells*, 1 *E. D. Smith*, 74; *Munger* agt. *Tonawanda R.R. Co.*, 4 *N. Y.*, 359; *Mangam* agt. *Brooklyn City R.R.*, 36 *Barb.*, 230; *Burke* agt. *Broadway & 7th Ave. R.R.*, 49 *Barb.*, 529; *Wilds* agt. *Hudson R. R.R. Co.*, 24 *N. Y.*, 430; *Same* agt. *Same*, 29 *N. Y.*, 315).

1. The same rule was applied to the keeper of a lunatic, in *Willetts* agt. *Buffalo & Rochester R.R. Co.*, (14 *Barb.*, 585).

2. There was not the slightest evidence of proper care on the part of the parents to support a finding in favor of plaintiff in that respect; on the contrary, there was the fullest evidence of want of any precaution to prevent access of the plaintiff to the piazza, in the face of open and notorious danger (*Spencer* agt. *Utica & S. R.R. Co.*, 5 *Barb.*, 337).

3. The fact of the child being alone in the dangerous place, is presumptive evidence of negligence in the parents.

The burden of proving the exercise of every reasonable precaution to prevent the accident, was thrown upon them, but was not met (*Mangam* agt. *Brooklyn City R.R. Co.*, 36 *Barb.*, 230).

4. The child had no right to use or be upon the balcony. It was no part of the premises for her use, and until it was put in repair the plaintiff had no right to endanger herself by the use of it. Using it, the plaintiff alone was to blame (*Bush* agt. *Brainard*, 1 *Cow.*, 78; *Terry* agt. *The N. Y. Central R.R. Co.*, 22 *Barb.*, 574).

*Second.* In addition to the culpable negligence of the parents of the plaintiff, there was the grossest negligence on her own part. The burden of proof was on the plaintiff to show due care and diligence on her own part (*Britton* agt.

*Hudson R. R.R. Co.,* 18 *N. Y.,* 248·; *Dey* agt. *N. Y. C. R.R. Co.,* 34 *N. Y.,* 9).

1. An infant is held to the same degree of care as an adult, and "is required to exercise the prudence of a person of ordinary intelligence, before an action for damages arises for an injury to her person, resulting partly from the carelessness of others."

"It is no excuse that she had less discretion than a grown person" (*Burke* agt. *Broadway & Seventh Av. R.R. Co.,* 49 ·*Barb.,* 529 ; *Honigsberger* agt. *Second Av. R.R. Co.,* 38 *N. Y.,* 1 *Keyes,* 570), and numerous other cases.

2. It was fully proved that "anybody could tell that the piazza was dangerous by the looks of it. That it was very shaky ; and all the witnesses agreed in representing the unsafe condition of the piazza as a fact well known to the occupants of the room, and consequently to the plaintiff; in fact, she had been warned against it.

*Third.* There was no proof of negligence on the part of the defendant. The defendant's obligation to repair did not make her responsible for accidents resulting from use of the balcony while it was out of repair.

*Fourth.* Great stress was laid in the court below on the alleged fact that the balcony in question was one of the appurtenances of the room, and that the plaintiff had a right to use and go upon the same. This theory is not available, for

1. The piazza was not an appurtenance to the room for the plaintiff. She could have no occasion to go upon it for any of the purposes for which it was alleged to have been used, viz., drying clothes, &c.

2. If to a charge that the plaintiff suffered injury by negligently going into a dangerous place, she could make answer that the place was one into which she had a right to go, the defense, contributive negligence, could rarely be sustained.

No man has a right wilfully to place himself in danger, and if injured, lay the blame on third parties.

*Fifth.* The learned judge erred .in refusing to dismiss the complaint. There should be a new trial, with costs to abide the event.

*Sixth.* The first question arising in this case is, whether there was any cause of action in favor of plaintiff against defendant. The defendant insists there was not, and that this judgment is without precedent; and asks to have the judgment reversed upon this ground.

1. This case must not be confounded with an action by a tenant to recover damages against his landlord, for injuries sustained by the tenant himself, arising from the neglect of the landlord to perform a valid agreement (or any other legal obligation resting upon him arising out of the circumstances) to keep premises in repair or to guarantee their safety. In such cases there is direct privity between landlord and tenant, and the action itself is either *ex contractu*, or arises directly out of the relationship of landlord and tenant (*Eakin* agt. *Brown*, 1 *E. D. Smith*, 36; *Robbins* agt. *Mount*, 4 *Robts.*, 553; *Johnson* agt. *Dixon*, 1 *Daly*, 178; *Francis* agt. *Cockerel*, *Law Rep.*, 5 *Q. B.*, 184, 501; *Alston* agt. *Grant*, 24 *Eng. Law and Eq.* 122; *Eagle* agt. *Swayze*, 2 *Daly*, 140; *Kimmel* agt. *Burfeind*, 2 *Daly*, 155).

2. The plaintiff endeavors to maintain this action on the ground of what the pleader is pleased to call the "negligence" or non-feasance of the defendant in not repairing or making safe a balcony (alleged to have been dangerous and unsafe) attached to the front of certain rooms, (on the fourth story of a house in East 13th street,) owned by defendant and exclusively occupied by the parents of plaintiff, under a hiring from defendant to plaintiff's father, in using which plaintiff was injured. Assuming the facts to be as alleged by plaintiff, then, in order to maintain the allegation of "negligence," as the basis of an action against the defendant to recover damages sustained by plaintiff in falling from this balcony, there must be shown some obligation, express or implied, either of contract or legal duty of the defendant

towards the plaintiff, which the defendant has failed to perform. The "negligence" alleged is another word for nonfeasance, and is predicable only of some contract voluntarily undertaken by the defendant, or some legal duty cast upon her by operation of law, in some relation between her and plaintiff. If the plaintiff be a stranger to the defendant, and there be no privity by contract between them, (as must be conceded) then is there any private legal duty which the defendant owed to the plaintiff, as a member of the family of the tenant; or any public legal duty owed by defendant to her, as one of the public or otherwise? Clearly the defendant owed no greater obligation of private legal duty to the plaintiff specifically, as one of the family of the defendant's tenant, than to his guests, or friends or visitors. Neither has the plaintiff a claim against the defendant for any neglect on her part to discharge any public legal duty she owed towards the plaintiff as one of the public. The premises in question are purely private property, and the "balcony" could only be reached by any person through the rooms leased to and exclusively occupied by the plaintiff's father, and not by defendant (*Winterbottom* agt. *Wright*, 10 *Mees. & Welsby*, 109; *The Mayor, &c., of Albany* agt. *Cunliff* 2 *N. Y.*, 172, 173; *Nicholson* agt. *Erie R. W. Co.*, 41 *N. Y.*, 530; *Loop* agt. *Litchfield*, 42 *N. Y.*, 351).

3. "Negligence" is well defined as consisting "in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty, to the injury of another. It is essential to a recovery, in the latter case, to establish that the defendant owed at the time some specific, clear, legal duty to the plaintiff, or the party injured" (*Nicholson* agt. *Erie R. W. Co.*, 41 *N. Y.*, 529).

4. As was previously well said by Judge DALY, in the case of *Cook* agt. *N. Y. Floating Dry Dock Co.*, (1 *Hill*, 438), and approved by Judge INGRAHAM, (*p.* 444;) "The only safe and practical rule is to confine the right of action to those who stand in the relation of contracting parties, or to

cases where the injury is caused by the disregard or neglect of some obligation or duty, which the party causing it owes to the party injured" (*Nicholson* agt. *Erie R. W. Co.*, 41 *N. Y.*, 529).

5. If, as erroneously alleged in the complaint, the defendant had "had the care and control of the premises" where the accident happened, or had been the "occupant" of the same, there might have been some pretext for claiming a recovery against her. But the defendant was the mere owner; and the custodian of the plaintiff was himself the "occupant."

6. The mere circumstance that the plaintiff was "lawfully" upon these premises at the time of the accident, is immaterial. It does not tend to raise any obligation of defendant toward her, or to sustain this cause of action. This has always been maintained in all the cases (*Southcote* agt. *Stanley*, 1 *Hurls. & Nor. Exch.*, 249; *Bolch* agt. *Smith*, 7 *Hurls. & Nor. Exch.*, 744; *Robbins* agt. *Jones*, 15 *Com. Bench., N. S.* 240; *Colles* agt. *Selden*, 3 *Law C. P. R.* 495; *Sullivan* agt. *Waters*, 14 *Jurist C. L. R.* 460).

7. The doctrine of "*respondeat superior*" does not apply to the facts of this case. There was no relationship of master and servant, or principal and agent, between defendant and any other person connected with the transaction; nor was there any misfeasance or other act done by the defendant or her authority; nor was she, as has been already said, in possession of the premises (*Bush* agt. *Steinman*, 1 *Bos. & Pull.*, 404; *The King* agt. *Pedlie*, 1 *Ad. & Ellis*, 822; *Rich* agt. *Basterfield*, 4 *Manning, Gr. & Scotts*, 800; *Hobbit* agt. *London & N. W. R. W. Co.*, 4 *W., H. & G., Exch.*, 254; *Reedie* agt. *London & N. W. R. W. Co.*, 4 *W., H. & G., Exch.*, 244; *Blake* agt. *Ferris*, 5 *N. Y.*, 63; *Earl* agt. *Hale*, 2 *Metcalf*, 352; *Boniface* agt. *Relyea*, 6 *Robts.*, 397).

8. Mere ownership of private property does not impose upon a party any liability to the public, or strangers, to keep the same in repair or free from danger; provided it does not

disturb a neighboring owner, or injure the public in the use of the neighboring streets or ways, or other public easements (*Chauntler* agt. *Robinson*, 4 *W., H. & G., Exch.*, 170; *Hounsell* agt. *Smythe*, 7 *Com. Bench N. S.*, 731; *Bolch* agt. *Smith*, 7 *Hurls. & Nor., Exch.*, 736; *Gantrels* agt. *Egerton, Law Rep.*, 2 *C. P.*, 370).

*Seventh.* Assuming there was a valid agreement between the defendant (as "landlord") and the plaintiff's father (as tenant) "to repair" this balcony, does that circumstance furnish a ground of action against defendant in favor of plaintiff to recover any damages sustained by falling from it? The defendant insists it does not.

1. The plaintiff and defendant were not contracting parties in any sense whatever.

2. If the defendant's alleged nonfeasance is said to grow out of her relation of "landlord" alluded to, then it is founded upon the contract between the landlord and tenant, and the obligation of the defendant, was to perform that contract, and the "negligence" or nonfeasance complained of is only a breach of that contract, and the remedy is by action *ex contractu*, and only in favor of a party to that contract, or his lawful representatives. The plaintiff, however, is none of these (*Blakemore* agt. *The B. & E. R. W. Co.*, 8 *Ellis & Blkb.* 1053).

3. Any agreement to repair was a mere matter between the "landlord" and "tenant." The contract did not affect third persons. It did not make the landlord liable to them, or relieve the tenant in possession from his liability to them (COLERIDGE, J., *Russell* agt. *Shenton*, 3 *Adol. & Ellis, N. S.*, 455; *Cannavan* agt. *Conklin*, 1 *Daly*, 511).

4. The proposition now contended for by the defendant, was thus laid down by this court in *Cook* agt. *N. Y. Floating Dry Dock Co.*, (1 *Hilt.*, 443 :) "That no action lies against the defendants, founded upon the contract in favor of any other person than those to whom the dock was hired, is conceded. This was established by the cases cited, *Winterbottom*

agt. *Wright,* (10 *Mees. & Welsby,* 109); *Priestly* agt. *Fowler,* (3 *Mees. & Welsby,* 1); *Quarman* agt. *Burnett,* (6 *Mees. & Welsby,* 499)."

5. So, also, said *Justice* MAULE, in *Tallit* agt. *Shenstone,* (5 *Mees. & Welsby,* 288:) "It is clear that an action of contract cannot be maintained by a private person who is not a party to the contract; and the same principle extends to an action of tort, arising out of the contract."

6. And where a master sought to recover damages for loss of services of his servant, who was injured by the negligence of a railway company, with whom the servant had a contract as a passenger, it was held that "one not a party to a contract cannot sue for a breach of duty, arising out of the contract" (*Alton* agt. *The Midland R. W. Co.,* 19 *Com. Bench, N. S.,* 213).

7. So, also, BARON PARKE, in the case of *Langbridge* agt. *Levy,* (2 *Mees. & Welsby,* 530), said; "That wherever a duty is imposed on a person by contract or otherwise, and that duty is violated, any one who is injured by the violation of it may have a remedy against the wrongdoer, * * * is a principle which would lead to indefinite extent of liability, * * * and we should pause before we made a precedent by our decision, which would be an authority for an action against the vendors, even of such instruments and articles as are dangerous in themselves, at the suit of any person into whose hands they might happen to pass, and who should be injured threby" (*Winterbottom* agt. *Wright,* 10 *Mees. & Welsby,* 114; See, also, *Colles* agt. *Selden, Law Rep.,* 3 *C. P.,* 495).

8. So, again, in *Robinson* agt. *Jones,* (15 *Com. Bench, N. S.,* 240), it was held by the full court, (after elaborate argument,) without dissent, that "a landlord who lets a house in a dangerous state, is not liable to the tenant's customers or guests for accidents happening in consequence, during the term; for, fraud apart, there is no law against letting a

tumble-down house, and the tenant's remedy is upon his contracts, if any."

9. Without an express contract, the landlord is not liable, even to the tenant, to make any repairs upon demised premises. Such an obligation grows out of the contract alone, and not out of the relation of landlord and tenant. Neither is there, in the absence of fraud, any warranty that the premises are even tenantable or fit for occupation. The rule of *caveat emptor* applies (*Hart* agt. *Windsor,* 12 *Mees. & Welsby,* 68; *Howard* agt. *Doolittle,* 3 *Duer,* 464 & 473; *Sherwood* agt. *Seaman,* 2 *Bosw.,* 130; *Kostor* agt. *Newhouse,* 4 *E. D. Smith,* 20; *Gott* agt. *Sounds,* 22 *Eng. Law and Eq.,* 173; *McGlashon* agt. *Talmadge,* 37 *N. Y.,* 313).

10. It matters not how stringent may have been the compact between landlord and tenant, that, as between themselves, the landlord should make repairs; the obligation of the tenant to his guests and family, to keep the premises wherein he invited them, safe from danger, was not discharged or impaired or shifted to the shoulders of the landlord. The occupant alone is the sole wrong-doer in privity with such persons, in case of injury from his neglect to procure the repairs to be made, either by the owner or himself. In the language of *Ch. J.* KENYON, (4 *T. R.,* 319:) "Deplorable, indeed, would be the situation of landlords if they were liable to be harrassed with actions for the culpable neglect of their tenants" (*Cheetham* agt. *Hampson, Term Rep.,* 318; *Mayor, &c.* agt. *Corlies,* 2 *Sand.,* 303; *Kostor* agt. *Newhouse,* 4 *E. D. Smith,* 20; *Bears* agt. *Ambler,* 9 *Barr Penn.,* 193).

11. Upon the principle now invoked, the courts refused to allow a wife to recover damages for personal injuries resulting from the explosion of a lamp sold her husband, though for the purpose of being used by herself and husband, which the vendor, without fraud, warranted to be fit and proper for use by her, but was, in fact, unfit for use, and dangerous

and unsafe (*Longmeid and wife* agt. *Holliday*, 6 *W.*, *H. & G. Exch.*, 761).

*Eight.* But even if there were a valid agreement to repair this balcony, and this action had been by the "tenant" himself against the "landlord;" and even if it had been an action for breach of contract, it could not avail to recover damages for injuries happening (as in this case) from the use or abuse of the balcony, after it was known to the tenant to be out of repair, unsafe and dangerous.

1. The tenant was not obliged to use it in order to have the fair use and enjoyment of the premises.

2. The tenant knew it was dangerous and unsafe.

3. We have seen that even a "written warranty" of safety would not protect against patent defects; much less would a mere agreement to repair those defects.

4. The tenant had no right to omit making such repairs as were necessary to make the premises safe and secure for the use of himself and all other persons he permitted to use the same, because he had an agreement with the landlord that the latter should make them. In fact, this would have been an additional reason why he should himself made them, and not be excused for his neglect in not making them. In this very agreement he would have had an indemnity against any necessary outlay in making them, and so was inexcusable.

*Ninth.* If there was a valid agreement to repair, and if the defendant was negligent to such an extent as to have rendered her liable for such an injury as occurred to the plaintiff, because the defendant neglected to perform her agreement, with her tenant, to repair this balcony, knowing it to be out of repair, in a case wherein the plaintiff herself had been free from negligence and had exercised all due and proper care and precaution to prevent the accident; nevertheless, the plaintiff, by contributive negligence of her parent, (she being *non sui juris*,) ·(1*st*,) in not making the repairs himself, (when he knew the balcony to be out of repair and dangerous and unsafe,) and looking to the landlord for reimbursement; (2*d*,)

in making an unusual use of this balcony when known to be dangerous, did herself, thereby, in a legal point of view, contribute to and actually cause the injury of which she complains (*Mangam* agt. *Brooklyn R.R. Co.*, 36 *Barb.*, 230; *Same case on appeal*, 38 *N. Y.*, 459).

1. If the plaintiff claim to derive any benefit from any agreement to repair, she must take it *cum onere*. The party beneficially interested in such an agreement would have had no right himself to rush into danger he might avoid, and look for damages to the other party to the contract. Neither can his infant daughter (*Butterfield* agt. *Forrester*, 11 *East*, 60; *Miller* agt. *Mariners' Ch.*, 3 *Greenlf.*, 55; *Shannon* agt. *Comstock*, 21 *Wend.*, 461; *Hecksher* agt. *McCrea*, 24 *Wend.*, 309).

2. If the defective balcony could even be deemed to be in the nature of a "nuisance," because liable to be the means or occasion of mischief to persons using it, still the plaintiff's father, being the occupant of the premises, "is liable for the damage caused by its continuance," and so, by neglecting to abate it, contributed, (as the guardian of the plaintiff) to the injury sustained by his ward. This negligence in the eye of the law was contributive negligence of plaintiff (*Brown* agt. *Cay., & Sus,. R.R. Co.*, 12 *N. Y.*, 492).

3. In the case of *Adams* agt. *Lancashire R.W. Co.*, (*Law Rep.*, 4 *C. P.* 739, A. D. 1869,) where, through the negligence of the defendants, the door of one of their carriages (wherein plaintiff was a passenger) several times flew open, and was shut by plaintiff, and in attempting to shut it a fourth time he fell out and was injured, it was held that, as the inconveniences he would have suffered, if he had not shut the door, was slight, and the peril incurred in his attempt to shut it considerable, the injury he suffered was not the necessary or natural result of defendant's negligence, and they were not liable for such injury.

4. In the case of *Siner* agt. *Great Western R.R. Co.*, (4 *Exch.*, 117), where plaintiff was a passenger in defend-

ants' railway carriage, which stopped at a station where there was no platform, and plaintiff in alighting from the carriage upon the ground, in the dark, sprained her knee; it was held that the injury was the result of her own act, and the defendant was not liable (*Cochle* agt. *London & S.E. R. W. Co., Law Rep.*, 5 C. P., 457 and notes 459, 460, 464).

5. So in the case of *Waite* agt. *North Eastern R.W. Co.,* (*Ellis, Blkb. & Ellis, Q. B., Rep.*, 719, A. D. 1858,) where the plaintiff, an infant in charge of his grand-mother, had been injured by the joint negligence of the defendants' agents and the child's grandmother, it was held the child could not maintain an action against the company.

6. So in *Walker* agt. *Swayze*, 3 *Abb.*, 136), the general term of the court of common pleas laid down the law on this subject as follows: " It has been held in this court, that the measure of damages in an action against a landlord for not repairing, is the amount it would cost to make such repairs; and for the reason that the tenant cannot, by exposing himself, his family or his goods, to the injuries or damage which result from the landlord's negligence, present a meritorious claim, when he could remedy the evil by repairs, for which he would be fully indemnified out of the rental," also *Holly* agt. *Boston Gas Light Co.*, 8 *Gray, Mass.*, 123 & 132; *Wright* agt. *Malden & Nelson R.R. Co.*, (4 *Allen*, 283).

*Tenth.* But in this case there was, in fact, no valid agreement between the landlord and tenant that the former should make any repairs to this balcony. The father of the plaintiff was the tenant, and had occupied the house for six years. The promise to repair the balcony was contained in a conversation between the mother of the plaintiff and the defendant. It was not contained in the agreement of hiring, and formed no part of it. It was based upon no consideration whatever, and was not binding upon the landlord (*Walker* agt. *Gilberts* 2 *Rob.*, 214; *Doupe* agt. *Germin*, 37 *How.*, 5).

*Eleventh.* Upon every view of this case the judgment

should be reversed. The upholding of the action would tend to establish a rule (now happily without a precedent) opening the door to almost an infinitude of demands in favor of un-known persons, against owners of real estate. Such a precedent would greatly impair the value of such property, and render ownership of the soil a condition full of uncertainty and indefinite liability.

F. H. BRYAN, *for plaintiff, respondent.*

The evidence shows that the premises where this accident occurred, was of that peculiar description of property, known in this city by the name of a tenement house. This court has decided at general term, that such property forms an exceptive case, and that after the attention of the landlord has been called to the existing defects in the structure, in case of non-repair, he is liable for the consequences of an accident, resulting from such neglect.

The attention of the landlord, defendant, was called to the defect of the railing; and by the neglect to repair, the accident occurred.

The balcony in use in which the railing was defective, formed a necessary part of the premises let by defendant to plaintiff; the evidence shows that its use was principally dedicated to the tenant.

The defendant had promised to have the repairs done.

I. In *Johnson* agt. *Dixon*, (1 *Daly*, 178). This court has held that a tenant from month to month is not bound to make substantial repairs.

In that case the plaintiff's horse having received an injury from the defective construction :

The court directed that the landlord was liable for the consequences arising from his neglect to repair. (43 *Barb.*, 282).

II. On the question of negligence, this, as a question of fact, has been decided by the court below.

This court will not disturb that decision. It is as conclusive as the verdict of a jury (1 *E. D. Smith*, 213; 3 *E. D. Smith*, 264; 2 *E. D. Smith*, 462; 4 *E. D. Smith*, 218; 25 *Barb.*, 122).

A higher degree of care may ·well be exacted from persons who own tenement house property than from others. The nature of the property and the uses to which it is applied, would appear to render such greater care necessary.

There appears also to be a disposition in the court to impose in certain cases the exercise of greater care and caution (12 *N. Y.*, 209).

There was no contributing negligence on the part of the plaintiff. The degree of care required of an infant, however intelligent, must be modified by the tenderness of the age.

The plaintiff had no right to anticipate that any accident would occur ; she was enjoying a right incidental to the use of the premises, and had every reason to suppose that such right would be enjoyed without injurious accident. A child is only chargeable with care and caution, according to its age and capacity *(Shouler on Domestic Relations).*

III. The defendant did owe a duty to the plaintiff, when a portion of this tenement house was let to the mother of the plaintiff, it was so let for a residence of her and her family. The use of the minor children, was a necessary and presumptive consequence of such letting. The landlord was bound to see, at her own peril, that the railing guarding this balcony was not defective in its construction, which it appears to have been, as found by the court below, and having failed to do this, the defendant was properly held liable.

*By the court,* ROBINSON, J.—I am of the opinion that the defendant was not responsible for the injury sustained by the plaintiff.

No question is presented as to the extent of damages which the tenant, the father of the plaintiff, has himself sustained by reason of any breach of the landlord's agree-

ment to repair; nor upon any claim as between parties standing in privity of contract, or estate, and rsepectively liable to each other; nor upon any claim that the premises, when originally rented to John Flynn, the father, were in a dangerous condition, or in any respect constituted a nuisance, public or private, which continued until the accident and occasioned the injury complained of.

The plaintiff is an infant of two or three years of age ; and John Flynn, her father, for some five or six years previous to the occurrence in question, had been a tenant, from month to month, of apartments, consisting of two rooms in the fourth story of a tenement house in the city of New York, the title to which had been recently acquired by the defendant. Outside and across the front of these rooms there ran a piazza, appurtenant to the demised premises, access to which was obtained through a door opening directly from the family sitting room, that was used by the tenant as a place for washing and drying clothes, and storing eatables.

It was protected by a railing, consisting of slats or rails running up and down "about three or four feet" from the floor of the piazza to the top rail. This railing had been for two years getting quite rotten and out of repair, " one end was quite separated and was secured by putting a barrel there."

'' It was pretty much all gone." Both the father and mother of the plaintiff were aware of its dangerous condition. The mother says, "she had been speaking about it, and defendant said she would have the repairs done."

On the occasion of the accident, the mother was on the piazza, hanging out clothes, when the plaintiff, whom she had left in the sitting room, without being noticed by her, came out into the piazza, leaned up against the upright railings, one of which gave way, and she fell through the opening, and was precipitated down four stories into an adjoining yard, and sustained the injuries complained of.

Under the facts of the case, the judgment ought not to be sustained.

*First.* The piazza was a portion of the premises which some six years previously had been demised to, and for all that time had been occupied by, John Flynn, the father, as tenant. It constituted no part of the common passages or other appurtenances, or conveniences in a tenement house, over which it could be inferred or presumed the landlord retained an exclusive or general control, or over or upon which strangers or tenants in general were invited to pass.

The defect in the railing arose from natural decay, occuring during the tenancy, and perhaps there was sufficient evidence to show that the landlord by agreement was to make such repairs as were needed to keep them in tenantable condition.

Conceding however, such obligation rested on the defendant by virtue of the agreement for the letting of these premises, she was not, by reason thereof, responsible to the plaintiff for the injury she sustained. Under breach of a contract, the party in default is only liable to the party with whom or to whose benefit he has contracted, for such damages as naturally and according to the usual course of things arise from the breach, or which may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its breach, but not for accidental, remote or consequential causes (*Sedg. on Damages,* 5th ed., 78 ; *Griffin* agt. *Culver,* 16 *N. Y.,* 489; *Hamilton* agt. *McPherson,* 28 *N. Y.,* 72; *Passenger* agt. *Thorburn,* 34 *N. Y.,* 634).

This distinction is well illustrated by the case of *Hadley* agt. *Baxendale* (26 *Eng. Com. Law & Eq.,* 398, *S. C.,* 9 *Exch.,* 341), (the principles of which have been adopted by our courts,) where plaintiff owner of a mill, verbally contracted with the defendant, a common carrier, to carry a broken shaft of the mill to an artificer at a distance, to serve as a model for a new shaft. Defendant violated his agreement to deliver the

broken shaft within a reasonable time, in consequence of which a delay occurred in supplying the new shaft, and plaintiff having no other, the mill necessarily remained idle, and claim was made for the damages sustained from loss of profits incurred, from the mill standing idle for the period occasioned by the defendant's default.

The defendant, when contracting, knew of the mill standing idle, but not that the shaft he undertook to carry was to serve as a model for a new one.

The court held, that damages from the latter cause could not be recovered; that only such were recoverable as fairly entered into the minds of the parties, as naturally arising from a breach or which might reasonably have been in their contemplation when the contract was made as the probable result of its non-performance; that in the absence of notice of the particular circumstances of the case, or that plaintiff did not have another shaft, or that the mill was in no other respect defective, nor delayed from any other cause, the loss of profits for the period claimed was not the proximate or necessary result of a breach of the agreement.

In *Hargous* agt. *Ablon,* (5 *Hill,* 474), Judge COWEN, in illustrating this subject, says: " Doctor Franklin's case of the defective horse-shoe nail, which resulted in the loss of the shoe, and thence in the loss of the horse, is an excellent lesson in private economy, but in an action against the farrier, it would not have done to have looked beyond the loss of the shoe. To have charged him with accidental consequences, would have worked his ruin." " Besides, such a rule would have put his fortune in the power of his employer who might be careless of consequences, or even secretly aid in promoting them."

So in the present case, the natural and ordinary damages for breach of a general agreement to keep the premises in repair are the expenses of repair, are the expenses of repair and the loss of the use of the premises, while the party contracting was in default or during the making of the

repairs and it could not have been contemplated that any special risk or accident resulting from any particular defect, or likely to occur from decay or want of repair in any particular part of the premises, was con sidered; and least of all was it likely they anticipated or had in thought or design, that the tenant, with full knowledge of the rotten or unsafe condition of any part of the premises, would expose himself, his wife, children or servant to any danger that might be threatened, of which he had full knowledge, and might avoid; or that it was the intention of the agreement that he or any member of his family should be insured or indemnified against all possible contingencies or casualties resulting from want of perfect repair in every portion of the premises.

In *Darwin* agt. *Potter*, (5 *Denio*, 306), the supreme court held that the landlord who had demised farming lands with barns thereon, was not liable to his tenant on failure to fulfil such an agreement, for injury resulting to cows or young cattle; for increase of food they required and decrease of their product, by reason of the state of the barns in question, but only for such sum as was necessary to place the barns in the condition in which they were to be put by the agreement, with interest.

In *Walker* agt. *Swayzee*, (3 *Abb.*, 136), decided in 1856; it was announced as a doctrine of this court that the measure of damages in an action on such a covenant was "the amount it would cost to make such repairs; and for the reason that the tenant cannot, by exposing himself, his family or his goods to the injuries or damage which result from the landlord's neglect, present a meritorious claim, when he could remedy the evil by repairs for which he would be fully indemnified out of the rental."

In *Beach* agt. *Crane*, (2 *Comst.*, 86), defendant had covenanted to erect and maintain a gate, between the public highway and plaintiff's land across, or over a private road granted him, and for default he was held liable for actual

injury occasioned by cattle coming on to the land, in consequence of the removal of the gate.

Here the erection and maintenance of the gate was specially contracted for, and its sole object was the protection of the land from such inroads of stray cattle from the highway, the damages were properly held to result as a direct consequence of the breach.

In *Myers* agt. *Beach*, (39 *N. Y.*, 269), the tenant was held entitled to recover, on such a covenant, the damages he had sustained from loss of the use of rooms in a hotel, caused by a defect in the flues of the chimney, while the landlord was in default; that the right to damages was not confined to the mere cost of the repairs, but that those resulting from the loss of use of the rooms, after the landlord had been notified of the necessity of repairs, were both certain and proximate.

In *Doupe* agt. *Genin*, (45 *N. Y.*, 119), the court of appeals held that in respect to the obligations to make repairs, there was no distinction in the respective duties of landlord and tenant of parts of tenement houses, from those imposed by law upon parties occupying the same relation as to entire premises or parcels of land.

From these authorities it is clear, that the mere agreement of the landlord to repair, has reference only to the condition of the building or premises demised, for the purpose of their profitable use ; and the pecuniary benefit to be derived from their enjoyment ; or loss from being deprived of their use in such state of repair as the agreement intended.

Such a simple agreement or contract in no way contemplates any destruction of life or casualties to the person or property of any one, which might accidentally result from an omission to fulfil the agreement in every respect.

The only case referred to, as arising upon such an obligation and supposed to maintain a contrary doctrine, is that of *Johnson* agt. *Dixon*, (1 *Daly*, 178), decided in 1861, by a divided court without allusion to the principles previously announced in *Walker* agt. *Swayzee*, (5 *Abb.*, 136).

The majority of the court there held the owner of a stable, who had leased to the plaintiff the use of a horse-stall, was liable to his tenant for injury to a horse, resulting from neglect to repair the floor of the stable after notice of its defective condition.

The decision is not based upon any mere breach of agreement to repair, but as stated in the prevailing opinion, upon the " wrongful act or default of the landlord himself resulting from his promise, when informed of the fact, ' to attend to it' and thereby preventing the horse from being withdrawn and the accident prevented."

It is assumed in the case that the repairs " were necessary to be done, to make the stable secure and safe for the purpose for which it was used, and that as matter of fact, the (such) " obligation rested on the defendant to do it." If any such agreement, as is last above stated, existed, within the principles of the cases above cited, it warranted the judgment, as it was made with special reference to maintaining the stall in a secure and safe condition, for the horse to occupy it, and, no contributive negligence on the part of the plaintiff being shown, the recovery of damages resulting from a breach of a stipulation, having reference to the safety of the horse occupying the stall, was properly sustained.

This decision, on such facts, does not in any way impair or affect the law as previously announced in *Walker* agt. *Swayzee.*

There are some cases in which additional damages, besides those allowed for breach of contract on the principles above stated, have been awarded, upon the ground of its fraudulent violation (See *Dewitt* agt. *Wiltze*, 9 *Wend.*, 325 ; as explained by *Judge* COWEN, in *Blanchard* agt. *Ely*, 21 *Wend.*, 350) ; *Sedg. on Dam.*, 5th *Ed.*, 223, *note i*). Little progress has, however been made in the introduction of this element as ground for awarding additional damages for non-performance of a contract, as against the well established and certain rule for their assessment predicated upon the immediate

pecuniary profit or advantage that would have resulted to the party contracted with, if fulfiled according to its legal force and effect (*Sedg. on Dam.*, 203, 208, *marg.*)    But for the proposition that a landlord under contract (generally) to keep the premises in repair is for breach, also further liable to his tenant as in tort for wilful refusal or neglect to perform his obligation.    No warrant is to be found in principle or authority. His subsequent parol promise, after being notified of defects, to make the necessary repairs, unless founded on a new consideration, superadds nothing to his original obligation (*Doupe. agt. Genin*, 37 *How.*, 5), and furnishes no ground for awarding additional damages except so far as the tenant (the landlord not having actually commenced to make the repairs) is by such promise delayed and hindered in making them (primarily) at his own expense.*    (*Turner agt. McCarthy*, 4 *E. D. Smith*, 547).

If the responsibility of the defendant, for the injury sustained by the plaintiff, is to be maintained, through force of

---

*NOTE. It would seem that notice of the breach of the contract to repair and the dangerous condition of the premises would be a sufficient consideration for the parol promise to repair the dilapidated premises; and that the landlord's neglect to fulfil his promise and make such repairs after such notice, constituted gross negligence. The tenant, it is true, might, on giving the landlord proper notice to repair in a specified time, make the repairs at his own expense and deduct it from the amount of the rent, but he was not obliged to do so, and it is always a hazardous business for the tenant, at best.

It is said that the promise of the landlord to repair, after notice from the tenant. of the defects superadds nothing to his original, obligation; it may be that it adds nothing to the original covenant to repair, but the non-fulfillment of the promise adds the very important element of negligence to the landlord's liability.

It is also said that a claim cannot exist on the part and behalf of sufferers from such dilapidated premises, in an action for tort or negligence, against one whose only obligation exists in contract with the tenant in possession; this may be true, but when, as in this case, there is added to such obligatory contract, negligence, upon which the action is founded, it creates an additional obligation.

If it is intended to be held that in no event can negligence be predicated of a promise of the landlord to repair, then there ought to have been a nonsuit in this case, as the action was wrongly brought for negligence.  If the action is properly brought, founded on negligence, there would seem to be no difficulty in recovering damages, remote and consequential as well as immediate and proximate.

But it is presumed that this case was decided (and perhaps properly so) on the ground of contributive negligence on the part of the plaintiff.—REP.

subrogation to the benefits of her personal obligation to her tenant to make repairs, there is no foundation for this claim; since the general covenant or agreement to repair had no reference to such an accident. Neither the case stated in the complaint, nor that made by the proof, is based upon any such obligation by way of contract, and the defendant must be held liable, if at all, in tort (as claimed in the complaint) upon some legal obligation or duty to the plaintiff outside of any such agreement. If the plaintiff, a stranger to the landlord's agreement to repair, can avail herself of its obligation (to which I do not assent) her rights under it cannot extend beyond those which it legally assured to the tenant; and as none would have been awarded to him, had he been the sufferer, in this case none can accrue to the plaintiff, claiming through or under him.

*Secondly.* There is no evidence that the railing of the piazza, when the premises were leased to John Flynn (the father) was in a dangerous condition or threatened any injury to any one.

Its deterioration or dilapidation (so far as appears) arose several years after the letting, and from natural causes or through defects thereafter occurring from natural wear and decay.

A claim cannot exist on the part on behalf of sufferers from such causes, in an action for tort or negligence against one whose only obligation exists in contract with the tenant in possession, and one can only be founded on some other negligence, trespass or wilful breach of a direct public or private duty to the party injured.

In the present case, the defendant had no relations with the plaintiff, either by contract, or public or private obligation in reference to this balcony or piazza, and owed no duty to her to keep and maintain its railing in a safe condition (*O'Brien* agt. *Capwell*, 59 *Barb.* 504).

But, *Thirdly.* Even if any obligation existed on the part of the defendant as landlady, growing out of her duty *sic*

*utere tuo ut alienum non lædas,* the case presented, is not one authorizing this recovery.

The negligence of the parents, in suffering the plaintiff to wander upon this balcony, and exposing her to the danger which they had for two years known and apprehended, was so gross and unambiguous, as to constitute contributive negligence, and should have prevented any recovery.

There was no contradiction or qualification to the force of the statements of plaintiff's parents and witnesses on her behalf, of their knowledge of the precarious condition of the balcony, or of their full apprehension of the hazard, to which any one was exposed by coming out upon it.

Where danger of injury being inflicted is to be apprehended and conseqences to result from the act or default of a party is likely to be serious, the highest degree of precaution and vigilance must be exercised (*Kelsey* agt. *Barney,* 12 *N. Y.,* 425), and if through neglect of this duty, which the law imposes on the party injured, of making reasonable exertions to render the injury as light as possible, the damages are unnecessarily enlarged, the increased loss falls on him (*Hamilton* agt. *McPherson,* 28 *N. Y.,* 72).

Possessing, as the parents of this child did, knowledge of the dangerous condition of this piazza, they do not appear to have taken any, or the slightest, precaution to keep it away from the danger, or to protect it from the known risk of playing or interfering with these insecure railings; but through forgetfulness or inattention of the mother it was allowed to stroll out, and expose itself to the apprehended calamity, and it suffered such consequences as might reasonably have been expected. To permit this child of two or three years of age to unconsciously rush into such a hazard, constituted gross negligence; as much so, as if it had been suffered to remain unattended, at an open window, which the landlord had neglected to supply with window sash, or other guards against it falling out of it.

The undisputed facts constitute a clear cause of contrib-

utory negligence on the part of the parents, in charge of a child too young to exercise discretion to avoid such a danger.

The rights of recovery of a child are controlled by the neglect of its parents, to the same extent as if it were capable of governing its own conduct, and had been equally neglectful (*Sher. & Red. on Negligence,* §§ 66, 37, 48; *Honegsberger* agt. *Second Av. R.R. Co.,* in court of appeals 33 *How.,* 193, overruling *S. C.,* 1 *Daly,* 89).

The injury arose from no culpable or aggressive act of the defendant, but could at most be claimed to have happened (remotely) through her breach of contract with another.

Under these circumstances the motion to dismiss the com plaint should have been granted; and as well on that account, as for the absence of any legal responsibility on the part of the defendant for the matters complained of, the judgment should be reversed.

I concur, R. L. LARREMORE.

DALY, Ch. J., dissenting.