## VOLUME 47,

### AND

## New York State Reporter,

## VOLUME 81.

(20 App. Div. 217.)

### NIAGARA FALLS PAPER CO. v. LEE et al. .

(Supreme Court, Appellate Division, Fourth Department. July 30, 1897.)

**1. SHIPPING—INDEMNITY AGAINST DETENTION OF VESSEL.**
A bond was given to the purchaser of a vessel indemnifying him "against any damage or loss in consequence of any debt or contract, maritime or otherwise." The vessel was libeled and detained. *Held,* that purchaser could recover on the bond for the delay, without showing that the detention was based upon an enforceable claim.

**2. SAME—DAMAGES—DIRECT RESULTS.**
Plaintiff purchased from defendants two schooners, lying at Milwaukee, and a steamer at Buffalo, receiving an indemnity bond against loss by reason of previous contracts for which the vessels were liable. The steamer was intended to be used to tow the schooners. One schooner was libeled and detained upon a previous contract, and, although defendants promised to secure its release immediately, they did not do so for 20 days. The other schooner in the meantime was loaded, and towed by a hired steamer. The purchased steamer was not sent to Milwaukee for the schooners, nor was it the intention, according to testimony of plaintiff's agent, to use it to tow the schooners on this trip. *Held,* that any delay of the steamer was not the direct, necessary, and natural result of the detention of the libeled vessel, and hence formed no ground for damages.

**3. SAME—AVOIDABLE CONSEQUENCES.**
Upon the application of the doctrine of "avoidable consequences," defendants were not liable for the delay of the schooner not libeled. ' . ''

Appeal from trial term, Erie county.

Action by the Niagara Falls Paper Company against George A. Lee and Gertrude E. Lee. From a judgment in favor of plaintiff, and an order denying a new trial, defendants appeal. Reversed.

The action was to recover damages that the plaintiff had sustained by reason of delay to the steamer St. Louis and two schooners (the Champion and

the Potomac), caused by the libeling of the Champion in the United States district court at Milwaukee in the spring of 1892. These vessels, on the 18th of February, 1892, were the property of the defendant Gertrude E. Lee. On that day the plaintiff purchased these vessels of her, taking a bill of sale for each, and on the 29th day of February, 1892, the defendants, upon a sufficient consideration, executed and delivered to the plaintiff an instrument in writing as follows: "This agreement, made the 29th day of February, 1892, by and between George A. Lee and Gertrude E. Lee, of the city of Buffalo, parties of the first part, and Niagara Falls Paper Company of Niagara Falls, N. Y., party of the second part, witnesseth: That, in consideration of the purchase by the party of the second part of the vessels St. Louis, Champion, and Potomac of and from the said parties of the first part, the said George A. Lee and Gertrude E. Lee do hereby jointly and severally, by these presents, undertake and agree to indemnify and save and keep harmless the said party of the second part from any and all loss, damage, and liability whatsoever arising from or by reason of any debts or contracts, maritime or otherwise, which were made or contracted prior to the 13th day of February, 1892. The said grantors to indemnify the grantee against any damage for loss in consequence of any debts or contracts, maritime or otherwise, entered into before February 13, 1892." At the time of the execution of this bond the Champion and the Potomac were at the port of Milwaukee, where they had been left by the St. Louis in the fall of 1891. The St. Louis was at the port of Buffalo. The Potomac was loaded with oats for Buffalo. The Champion was light, having discharged a cargo which had been delivered by rail, but a marine contract for freight had been entered into prior to the 13th of February, 1892, which provided for the delivery by the Champion of a cargo of corn at Buffalo, and on the 6th of April, 1892, the Champion was libeled in the United States district court at Milwaukee upon this contract. The Champion was arrested upon the warrant issued upon this libel, and was detained thereby from the 6th day of April until the 29th of April, 1892, a period of 23 days, when she was bonded, and discharged by proceedings taken by the defendants. One John L. Crosthwaite, a vessel broker, residing at Buffalo, was the agent and manager of the plaintiff in the transactions, and negotiated the sale of the vessels, received notice by telegram of the libeling of the Champion on the 6th of April, and notified the defendants immediately; and according to his testimony they promised to execute a bond, and have the Champion released, and kept promising frequently to do so, but neglected it until the 28th of April. The St. Louis was undergoing repairs in Buffalo during the month of April by direction of the plaintiff, but she was ready to leave for Milwaukee about the 20th of April, and it would take 4½ to 5 days for her to make the trip, so that she could not have arrived at Milwaukee to tow the Champion or the Potomac until about the 25th of April. The Potomac remained with her cargo at Milwaukee until the 22d of April, when she was towed to Buffalo alone by a vessel procured by the plaintiff. The St. Louis did not go to Milwaukee before the Champion was released, and the plaintiff's agent testified: "I did not start the St. Louis up there on the 6th. I did not intend to start her at all. I intended to get those boats down here by towing them with outside steamers. I expected to tow them [the Potomac and the Champion] both together." The plaintiff sought to recover in the action upon the indemnity bond above set forth, and over the defendants' objection gave evidence upon the trial as to the value of use of the St. Louis per day during 10 days that the plaintiff's agent testified that the St. Louis was detained in consequence of the libeling of the Champion. The question put to the agent was: "Q. How long was the St. Louis detained in waiting for the Champion?" The defendants objected to this question that there was nothing to show that the St. Louis had been detained; that the liability of the defendants could go no further than for the detention of the Champion; that it was an improper measure of damages. This objection was overruled, and the witness answered: "A. I figured ten days,—ten the Potomac. The St. Louis and Potomac were each detained ten days." The witness was then asked what was the value per day, and over the defendants' objection that it was not the proper measure of damages, and, as against the defendants, was immaterial, the witness answered: "A. On the basis of freights of 1892, she was worth at least

$100.00 a day with the Potomac, and for ten days, $1,000.00." The trial court submitted the question to the jury whether it was reasonable for the plaintiff to recover damages for the delay of the St. Louis and the Potomac, and, if so, the jury were permitted to find such damages, to which the defendants excepted.

Argued before HARDIN, P. J., and ADAMS, GREEN, and WARD, JJ.

Carlton E. Ladd, for appellants.
Frank R. Perkins, for respondent.

WARD, J. The defendants, upon the trial, offered to show, in effect, that the claim or contract upon which the Champion was libeled was not a valid claim. This the trial court refused to permit, and the defendants urge such refusal here as serious error. This contention cannot prevail. The condition of the indemnity bond was that the plaintiff should be indemnified "against any damage or loss in consequence of any debt or contract, maritime or otherwise." It is conceded that there was a maritime contract in existence whereby the Champion was to transport a load of corn to Buffalo, and as a result of the nonperformance of that contract she was libeled and detained. Against such a mischief the indemnity bond was aimed, and it was not necessary that the plaintiff should establish, as upon a litigation between the parties to the contract, the validity of the contract, or that it could be enforced. The contract was sufficient to create the cause of detention which created the damage complained of by the plaintiff. In Trustees v. Galatian, 4 Cow. 340, it was held that a bond to save harmless and indemnify against the costs and expenses of a certain act extends to the costs of defending a groundless suit for the act in which the obligee succeeded, and that the rule that a covenant for quiet enjoyment is not broken until a lawful suit and eviction is technical, applying to that particular covenant, and does not extend to a bond of indemnity. In Insurance Co. v. Watson, 59 N. Y. 390–394, an action had been brought upon an indemnity bond which indemnified the insurance company against the claims of a certain person upon certain insurance moneys, and from all costs, etc., that should arise therefrom. Grover, J., said:

"It will be seen that the question is whether the word 'claims,' as used in the bond, was intended to include such only as were valid, and which were in fact enforced by legal proceedings, or was intended to embrace such as were asserted by legal proceedings causing necessary expenditure to the defense, although ultimately adjudged invalid."

And the learned judge, with his usual clear reasoning, reached the conclusion that the word "claims" was not intended to embrace valid claims only, but to embrace any claims, whether valid or otherwise, that might subject the party indemnified to costs, delay, or expense. The cases cited upon this subject by the learned counsel for the defendants do not assist us.

The serious question arising upon this appeal relates to the evidence of damages as to the detention of the St. Louis and of the Potomac. The plaintiff's contention upon the trial was that these

three vessels had been used together upon the Lakes, the two schooners being towed by the St. Louis as its consorts; and that it was in the contemplation of the parties, when the indemnity bond was given, that this condition should continue in regard to these vessels, and that the detention of one vessel would consequently detain the others. The plaintiff gave some proof tending to show that these three vessels had been previously so used upon the Lakes. Such damage as resulted to the plaintiff from the delay of the Champion by the libel proceedings it can unquestionably recover. Whatever damage that may have been, it was proved in connection with the assumed damage or loss consequent upon the detention of the other vessels, and we cannot say how much of the loss occasioned by the detention of the St. Louis is embraced within the verdict of the jury; and .if we conclude, therefore, that the case does not warrant an allowance of damage as to either the St. Louis or the Potomac, a new trial must be directed.

To entitle the plaintiff to damages for the detention of the St. Louis, it must be made to appear that the vessel was detained as a direct, necessary, and natural result of the detention of the Champion, or at least it must appear from the evidence that that was a proper question to be submitted to the jury. The foregoing statement of facts shows that the St. Louis was in no manner detained by the libeling of the Champion. It was not at the place it should have been if it were intended that it was to tow either the Champion or the Potomac to Buffalo. The concession of the plaintiff's agent is to the effect that it was not intended to send the St. Louis to Milwaukee for that purpose, and the evidence connecting the detention of the St. Louis with that of the Champion seems to have been a conclusion of the witness not based upon the facts. It cannot be said that the damages claimed as to the detention of the St. Louis may fairly and reasonably be considered as naturally arising from a breach of the contract of indemnity.

It was said in Griffin v. Colver, 16 N. Y. 491, by Selden, J., that the rule is fundamental which requires that the damages claimed should in all cases be shown by clear and satisfactory evidence to have been actually sustained, and that it was a well-established rule of the common law that the damages to be recovered for a breach of the contract must be shown with certainty, and not left to speculation or conjecture. The most that can be said with regard to these damages is that they were remote and conjectural. The law does not assume to grant relief for all the possible consequences of the breach of a contract, but confines itself to those direct damages which flow from the breach complained of. We may cite in support of this rule, Burton v. Pinkerton, L. R. 2 Exch. 340, where the plaintiff made a contract to serve on board an English ship as one of its crew on a voyage from London to Rio Janeiro and back to a final port of discharge. At Rio the master engaged in an illegal business, and the plaintiff left the ship. While at Rio he was seized by the authorities, and imprisoned as a Peruvian deserter. In an action for a breach of the contract the plaintiff was allowed to recover damages

for the loss of the wages he might have earned, but was denied damages for the imprisonment.   Bramhall, B., in delivering the opinion of the court, says:

"It is true that in one sense the defendant's conduct caused the imprisonment; but for that, no doubt, the plaintiff would not have been imprisoned.   That, however, is not enough.   *   *   *   According to the ordinary rule, damage to be recoverable by a plaintiff must inevitably flow from the tortious act of the defendant.   It must be caused by him as the causa causans, and this imprisonment was not so caused."

In Prosser v. Jones, 41 Iowa, 674, the defendant agreed to give the plaintiff $100 for a threshing machine, and thresh his wheat at any time within four days after notice.   This he failed to do, and the plaintiff, whose wheat was unstacked, and who was unable to get another machine to thresh it, brought an action to recover for such injury as it afterwards sustained, and the expense of stacking it; but it was held that such damages were too remote to be recovered in an action for the breach of the contract.   Reference may be had, also, to Fuller v. Curtis, 100 Ind. 237, and to Osborne v. Poket, 33 Minn. 10, 21 N. W. 752.   It is unnecessary to multiply cases further upon this subject.   There seems to have been no difficulty in procuring a steamer to tow the Potomac from Milwaukee to Buffalo. It was the duty of the plaintiff, upon discovering that the Champion was detained, and the St. Louis being in Buffalo, if it desired to tow the Potomac to Buffalo, to procure a vessel for that purpose, and not wait for the discharge of the libel upon the Champion.   The plaintiff gave evidence which is claimed to have excused this delay, viz. the promise of the defendants to remove the cause of the detention of the Champion.   As the St. Louis was not there to tow either of these vessels, and as another boat was to be procured for that purpose, there was no object in the Potomac waiting for the Champion, except the expense that might be saved by towing both of the vessels together.   It is to be hoped that upon another trial the obscurity surrounding this situation as to the Potomac will be cleared up so that an intelligible judgment can be based upon it.

It is unnecessary to further comment upon the situation of the Potomac, or as to any claim of damages that may arise as to its detention at this time, as a new trial must be granted for the errors already referred to.   It is a wholesome rule, that should be borne in mind in the disposition of these cases, that the law imposes upon a party subjected to injury from a breach of contract by the other party the active duty of making reasonable exertions to render the injury as light as possible.   Hamilton v. McPherson, 28 N. Y. 72; Milton v. Steamboat Co., 37 N. Y. 210.   If, therefore, the delay of the Potomac and of the St. Louis was the result of the negligence of the plaintiff, or the result of its failure to provide other means for occupying the St. Louis and the Potomac during the period of the detention claimed, the loss should not fall upon the defendants.

The judgment should be reversed, and a new trial granted, with costs to abide event.   All concur.