JUDSON A. STANTON v. SAUK RAPIDS COMPANY.

November 22, 1898.

Nos. 11,422—(61).

Conveyance of Water Power—Covenant to Keep Dam in Repair—
Liability of Purchaser at Foreclosure Sale.

> The owner of certain mill sites and water power, upon which there
> was a mortgage, conveyed to the plaintiff one of the sites, with the
> perpetual right to draw a specified quantity of water from the canals
> on the part of his premises not conveyed, and covenanted to keep in re-
> pair the dam thereon which forced the water into the canals. The mort-
> gagees joined with him in the deed, but not in the covenant, and the
> parties expressly agreed that the plaintiff should look to the mortga-
> gor only for the performance of the covenant. The defendant is the
> owner of the mortgaged premises not so released, through a foreclosure
> sale under the mortgage. *Held*, that it is not liable on the covenant to
> keep the dam in repair.

Action in the district court for Benton county to recover $5,000
for breach of covenant. A demurrer to the complaint having been
sustained by the court, D. B. Smith, J., judgment was entered in
favor of defendant, from which plaintiff appealed. Affirmed.

*G. W. Stewart*, for appellant.

*Warner, Richardson & Lawrence*, for respondent.

START, C. J.

The Sauk Rapids Water-Power Company, a corporation, on and
prior to May 1, 1874, was the owner of certain real estate, consisting
of mill sites, riparian rights and water power, situated at Sauk
Rapids, and on that day executed thereon a mortgage, in form of a
deed of trust, to Greenleaf Clark, as trustee, to secure the payment
of certain obligations evidenced by its promissory notes. The mort-
gage was recorded in the proper county on May 27, 1874. There-
after, on June 5, 1875, the Sauk Rapids Water-Power Company, the
trustee under the deed of trust, and William F. Davidson and
Francis R. Delano, the owners of all of the promissory notes secured
thereby, as parties of the first part, executed a deed to Judson A.
Stanton, the plaintiff, as the party of the second part, and thereby

conveyed and released to him in fee a part of the mortgaged premises, known as "Mill Site No. 5." They also granted and released to him, his heirs and assigns, forever, upon and subject to the conditions named in the deed, the right to the perpetual use in connection with his mill site, free of rent, of a quantity of water sufficient to constitute 100 horse power. This grant of the mill site and of the use of the water power was upon and subject to 16 separate conditions, covenants and limitations, which, so far as here material, are as follows:

"Said grantee shall enjoy equal rights with said company and its other grantees, in and to the driveways, streets, alleys and platforms of said company, for the purpose of passing with teams or on foot, for all persons connected with the building of said grantee, on said mill site. The water power expressed in this deed is declared to be the right to draw from the canals or water courses of the said company such number of horse power as is expressed in this deed. * * * The said company is to construct and forever keep in good repair the principal canals, and from time to time, as occasion may require, is to remove and clear out obstructions that may accumulate therein. It is also forever to maintain the dam in the Mississippi river, to turn the water into the principal canals, unless prevented by unavoidable cause. * * * If the main dam or dams in the Mississippi river, or any part thereof, or any part of the structures of the said company, shall be carried away by flood or freshet, burned or in any way destroyed, so that in consequence thereof the water power hereby granted shall not be furnished to the said grantee, the said company shall reconstruct the same as soon as practicable, and in a reasonable time, and the said grantee shall not be entitled to damages for any deprivation of said water power from said causes. * * * The said trustee, Greenleaf Clark, has, by and at the request of the said company, and of the said Delano and Davidson, joined in this deed for the sole purpose of granting and conveying to said grantee the mill site and water power so contracted by said company to said grantee as aforesaid; and the said Delano and Davidson, who are now the owners and holders of all the notes and debt now outstanding secured by said trust deed, have joined therein for the purpose of releasing and testifying their consent to the release of said mill site and water power from the said trust deed, and the conveyance thereof to said grantee, for the considerations aforesaid; and it is expressly understood that the said trustee shall not, nor shall the said Delano or Davidson, nor shall the future holder of the promissory notes described in said trust deed, and secured or to be secured thereby, or any or either of them, be in any way or manner liable to said grantee, his heirs, executors, administrators or assigns, or to any

one, upon or for the performance of any condition, stipulation, covenant or agreement herein contained, but the said grantee, his heirs, executors, administrators or assigns, shall be entitled to look to the said Sauk Rapids Water-Power Company only for the performance of any of the conditions, stipulations, covenants or agreements herein contained."

William F. Davidson became the owner of all of the mortgaged property, except what was conveyed to the defendant, by purchase thereof at a foreclosure sale, under the trust deed; and on November 12, 1883, he conveyed the premises to the Sauk Rapids Company, the defendant herein; and thereafter, and until April, 1893, it complied with all of the terms of the deed to the plaintiff as to furnishing water power and keeping the dam in repair. But on the last-named date the dam was broken by water and ice, and rendered practically useless, and the plaintiff, by reason thereof, has been ever since deprived of the use of the water power. The defendant refused to repair the dam, and the plaintiff brought this action to recover his damages for a breach of the covenant to keep it in repair.

The complaint alleged the foregoing facts, and the defendant interposed a general demurrer thereto, which the trial court sustained. Judgment was entered thereon for the defendant, from which the plaintiff appealed.

The contention of the plaintiff is that the covenant of the mortgagor, the Sauk Rapids Water-Power Company, perpetually to keep the dam in repair, and rebuild it if destroyed, runs with the land upon which it stood, and bound all subsequent owners thereof, although they derive their title through the foreclosure sale under the prior mortgage on the land. The intention of the parties to the deed containing the covenants in question is clearly expressed on the face of the deed. The original company owned, subject to the mortgage, a water power and mill sites. It sold one of the sites to the plaintiff, but such mill site without power would not have been of any practical value; so with it was granted the perpetual right to use, in connection with it, water equal to 100 horse power to be drawn from the canals of the company on the land retained by it. The mortgagees joined in this grant, and thereby, not only was the plaintiff's mill site released from the lien of the mortgage,

but a perpetual easement in the land retained was created, for the benefit of the land so sold and released, which was made paramount to the lien of the mortgage. The continued enjoyment of this easement depends upon the maintenance of the dam, which the mortgagor alone covenanted to maintain.

Is the defendant, as the present owner of the servient estate, personally bound to perform this covenant? This is the only question in this case. It may be conceded that equity would not permit such owner to do any act whereby the enjoyment of the easement by the plaintiff would be interfered with; but the affirmative performance of the covenant cannot be enforced against him, for the deed expressly provided that the plaintiff was entitled to look to the mortgagor only for the performance of the covenant. The parties in effect stipulated that neither the mortgagees nor their existing interest in the servient estate should be liable for or burdened with the performance of the covenant to maintain the dam. The language used by them to express this agreement and intention is too clear and certain to justify any argument as to its meaning.

The plaintiff, however, claims that this agreement secures the mortgagees only against personal liability on the covenants. "It gives," he says, "the holders of the notes, as long as they remain such, immunity from personal liability, but it does not specify that the future owners of the property could not be sued upon the liability imposed upon them at the time as the successor in interest of the covenantor;" that is, that the mortgagees, so long as they held their security without realizing thereon, would not be liable on the covenant, but as soon as they made it available, by foreclosing their mortgage and purchasing the premises in satisfaction of their debt, and the time for redemption expired, they would immediately become liable to perform the covenant.

The very purpose of the carefully worded contract was to prevent any impairment of their security beyond the release of plaintiff's mill site and the grant of the easement. But his construction of the contract would tend directly to defeat this purpose; for, if his contention is correct, the owners of the security could not foreclose the mortgage, and bid in and secure title to the mortgaged premises, without making themselves personally liable to perform

74 M.—19

the very covenants that the contract expressly stipulated they should not be liable for, and as to which the plaintiff expressly agreed that he would look to the mortgagor only for performance. The defendant is not that mortgagor, but a separate corporation, having the title and the rights of the mortgagees, including their nonliability for the performance of the covenant in question. No action can be maintained against it for damages for not rebuilding its dam; hence the complaint did not state facts sufficient to constitute a cause of action.

Judgment affirmed.