J. G. RIES & SONS, INC., A NEW JERSEY CORPORATION,
PLAINTIFF-RESPONDENT, v. THE AUTOMOBILE IN-
SURANCE COMPANY OF HARTFORD, CONNECTICUT,
A CORPORATION, DEFENDANT-APPELLANT.

Argued October 24, 1938—Decided January 13, 1939.

For the plaintiff-respondent, *Bailey & Grimm* (*George B. Bailey*).

For the defendant-appellant, *Cox & Walburg* (*Harry E. Walburg*).

The opinion of the court was delivered by

CASE, J. The defendant appeals from a judgment of the Supreme Court in the amount of $5,906.59 rendered on a finding by a Circuit Court judge, sitting without a jury, on the pleadings and an agreed stipulation of facts. The action was on an insurance policy issued to the plaintiff by the defendant and was to recover for the loss by theft of a truckload of tin in pigs.

Plaintiff is a common carrier. On April 16th, 1936, it received on its truck, under the control and in charge of a driver and helper, both employes of the plaintiff, at a pier in Brooklyn, New York, one hundred and seven pigs of tin for delivery in Bloomfield, New Jersey. Because of the congestion at the pier the loading was completed at an hour too late to permit delivery to the consignee that day. The truck with its load was therefore driven by the said employes to and into plaintiff's garage in Newark, New Jersey, with the purpose of making delivery to the consignee the following morning. The driver and helper went home. John H. Ries, treasurer of the plaintiff corporation, whose duty it was to remain until all trucks were in and stored for the night, locked the garage at seventy-fifty o'clock and departed. When he left there was no person in the garage portion of the building where the trucks were stored, and the load of tin was on the truck precisely as it had been when the truck rolled in. The president of the company lived in an apartment over the office portion of the garage premises and was in his home at that time and all of that night. The plaintiff, in conjunction with other manufacturers and owners of business buildings in the vicinity of plaintiff's garage, had for a long time prior to and including the date of the loss employed a night watchman to keep watch and periodically inspect the premises of the plaintiff and of the others by whom he was employed during the hours between seven o'clock in the evening and seven o'clock in the morning. On the night in question the watchman made his rounds in the neighborhood returning to the plaintiff's premises every hour until midnight and every hour and a half thereafter, and on these visits inspected the

doors of plaintiff's garage from the outside and found them locked. He did not sleep on plaintiff's premises, and there is nothing to indicate that he was inside of the building except once in the early evening. The watchman had no knowledge of how the loss occurred. Except for the presence of the plaintiff's president in his living apartment and for the periodic attendance of the night watchman, there was no guarding of the truck. When John H. Ries arrived the following morning at six-forty-five o'clock, he found that the truck mentioned above, with its load, and also another truck, were missing. At about eight o'clock of the same morning the two trucks were found by the police on different public highways in the city of Newark. The truck which had contain the pig tin was empty. The load had been removed and has never been recovered.

For the premium of one per centum of plaintiff's receipts for trucking the defendant insured the plaintiff against fire, perils by water-ways, overturning of truck and collapse of bridges, and, by special rider, against theft. The rider contained this warranty:

"Warranted by the Assured that each of the trucks carrying Pig Tin, Aluminum Bars, and/or Tin Tetrachloride shall be in charge of at least two men, at least one of whom shall be in attendance and guarding said truck or trucks at all times when containing this merchandise at the risk of this Company."

The court found the facts to be as stated in the stipulation but determined that the trucks were not, while they were in the garage, "carrying" the pig tin and that consequently the warranty did not apply. The court further found that the truck was actually in charge of two men and that one was in attendance and guarding the truck at all times when it contained the covered merchandise. The defendant had moved for a directed verdict, and the record stands as noting an objection to the court's determination.

We find that there is no evidence to sustain a factual finding that the truck was attended and guarded within the language of the warranty. Neither a man sleeping in the

second story of an adjoining section of a building nor a watchman whose function and performance consists of ascertaining from the outside of a structure, at intervals of an hour and a half, whether the doors are locked may truthfully be said to "be in attendance and guarding" a truck on the inside of the structure "at all times * * *."

The construction and effect of a written instrument is a matter of law to be determined by the court and not by the trier of fact; and it is the function of the court to enforce a contract as it is written. *Smith* v. *Fidelity and Deposit Co.*, 98 *N. J. L.* 534. "For a comparatively small consideration the insurer undertakes to guaranty the insured against loss or damage, upon the terms and conditions agreed upon, and upon no other, and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss." *Imperial Fire Insurance Co.* v. *County of Coos*, 151 *U. S.* 452; 38 *L. Ed.* 231, 235; *Hudson Casualty Insurance Co.* v. *Garfinkel*, 111 *N. J. Eq.* 70.

We think that the warranty is to be construed as meaning what it says and we have not words with which to give plainer interpretation to the language of the warranty than do the very words of the warranty. The warranty required that a truck should be in charge of at least two men and that at least one of those men should be in attendance and guarding the truck at all times while containing merchandise for which the insurer was to be held responsible. It is argued by the respondent and the court below held that the warranty had reference only to the times when the plaintiff's trucks were "carrying" the pig tin and that storing the metal in a garage was not carrying it. That construction, we think, is quite too narrow. The stipulation of facts contains in the first paragraph: "Plaintiff * * * is engaged as a common carrier of goods, and merchandise, * * * and was so engaged at all the times mentioned hereinafter." It is therefore conceded by the plaintiff that notwithstanding the goods were kept overnight in its garage it was a common carrier.

The fact that the insured, for the more effective performance of its duty as carrier, interrupted the course of its vehicle and housed it, with its contents loaded thereon, overnight does not, in our opinion, change his position as a common carrier. We think that within the significance of the words in the insurance contract the truck was carrying the goods. The act of transportation had begun at the pier. The destination was at Bloomfield. If the men in charge had left the truck in the highway while they obtained lodging and a night's rest, or even at midday while they went to a dining room for a meal, could it be said that because the truck was not in motion it was not carrying the goods which it was in the interrupted process of transporting? To hold that it was the intent of the parties that there might be a period of twelve hours when the truck with its valuable load of metal could, at the risk of the insurer, be left without an attending guard requires, we think, an unreasonable construction of the contract.

The judgment below will be reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 16.