107 N.J. Super. 535 (1969)
259 A.2d 485
DEN GRE PLASTICS CO., INC., A CORPORATION, PLAINTIFF,
v.
THE TRAVELERS INDEMNITY COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 14, 1969.
*537 Mr. Sidney Krieger, attorney for plaintiff.
Messrs. Michels, Schwartz & Maher, attorneys for defendant.
BRESLIN, J.D.C. (temporarily assigned).
Plaintiff seeks recovery for the theft of merchandise in the amount of $3,623.05, pursuant to the terms and coverage of Transportation Policy No. MT 841667 issued to it by defendant. Plaintiff leased certain premises in Lodi, New Jersey, which consisted of buildings designated as Nos. 20 and 122. Attached to said buildings was a loading platform which plaintiff utilized in loading merchandise upon its trucks and those of public carriers. Defendant admits issuance of the policy but contends that the theft did not occur while the property was in plaintiff's custody and actually in transit, as required by paragraph 3 of the policy, and, additionally, that the property at the time of the theft was located on premises occupied by plaintiff and therefore was not covered under paragraph 10(a)(1).
Paragraph 3 provided:
The insurance covers only while the property is in the custody of the assured and actually in transit and only while contained in or on the following described vehicles owned, rented or leased and operated by the assured
Paragraph 10 (a) (1) provided:
This policy does not insure (a) Property while it is located; (1) In or on premises, owned, leased or occupied by the Assured.
The proofs established that on Saturday morning, March 23, 1968, one Samuel Berger, an employee of plaintiff backed a 1965 GMAC truck (covered by policy) to the loading platform and proceeded to load it with the merchandise allegedly stolen. Upon completing the process he proceeded to move the truck approximately ten feet to another location *538 against the loading platform. He prepared four invoices covering the loaded merchandise which was then to be driven by a fellow employee on the following Monday morning to Brooklyn, New York, and Middle Village, New York. The invoices were placed in the office of the company where they were to be picked up by the driver of the truck on Monday morning. Berger discovered that the truck was missing upon his arrival at work on Monday morning.
Plaintiff contends that the loading of the merchandise on the truck by Berger and the moving of the same to another location alongside the loading platform constituted a compliance with paragraph 3 of the policy in that the merchandise was placed in transit by the action of Berger in moving the truck. It further contends that the property was not on premises occupied by plaintiff at the time of the theft since it leased only the two buildings and not any property adjacent thereto, including the area upon which the truck was located.

I

Was the property actually in transit, as required by paragraph 3, when the truck was loaded and moved to another location adjacent to the loading platform preparatory to delivery on the following Monday morning?
A policy of insurance is a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed. Shuman v. National Cas. Co., 80 N.J. Super. 310 (Law Div. 1963), & rev'd on other grounds, 88 N.J. Super. 57 (App. Div. 1965); Dealers Dairy Products Co. v. Royal Ins. Co., 170 Ohio St. 336, 164 N.E.2d 745, 80 A.L.R.2d 441 (Sup. Ct. 1960). In the latter case the court stated that the words "in transit" and "transportation" ordinarily mean the movement of the goods on a transporting conveyance from the starting point to the point of delivery, including stops along the way, incidental to carriage. Transit implies *539 a movement towards destination. Armory Mfg. Co. v. Gulf C. & S.F. Ry. Co., 89 Tex. 419, 37 S.W. 856 (1896). It has a significance of activity, motion and direction; in common speech it is the act or process of causing to pass from one place to another. San-Nap-Pak Mfg. Co. v. Firemen's Ins. Co., 47 N.Y.S.2d 542 (City Ct. 1944). In Mayflower Dairy Products v. Fidelity Phenix F. Ins. Co., 170 Misc. 2, 9 N.Y.S.2d 892 (Sup. Ct. 1938), the court, construing a policy provision similar to the instant one, held:
"Transportation" or "in transit" as applied to a seller making its own deliveries to customers means the movement of the loaded conveyance carrying the goods from the starting point or seller's premises to the point of destination or place of delivery to the buyer or customer. While there may be some reasonable deviation such as temporary stops incidental to the process of delivery or necessary for those engaged in same, or even the return of undelivered goods, `transportation' or `in transit' implies the continuous action of moving the goods from one point and putting them down in another. [at 893]
In Home Insurance Co. v. F. & F. Clothing Co., 250 Md. 534, 243 A.2d 572 (Ct. App. 1968), the insured's employee drove a loaded station wagon from the company building to his home for delivery early the next morning. During the night, while the car was parked at the employee's house, it was stolen. The court, confronted with the question of whether the cargo was "in transit," relied on Mayflower Dairy Products v. Fidelity-Phenix F. Ins. Co., supra, and other cited cases. Determining that, in light of the reviewed decisions, transit does not commence until the conveyance leaves the point of origin, at least in the process of moving toward its destination, the court held that when he drove the car from the company plant to his home, the driver removed it and its cargo from the point of origin and from any position of storage; it was thus "in transit."
In San-Nap-Pak Mfg. Co. v. Firemen's Ins. Co., supra, the plaintiff loaded goods on to its truck on a Saturday, to be ready for delivery the following Monday. The truck was left in an open lot contiguous to its loading platform. *540 During the weekend the goods on the truck were damaged. Plaintiff sued to recover under defendant's policy insuring the plaintiff against loss of goods while the latter were "in transit." The court held that "transit" could not be construed as initiating in the loading of the trailers and their supinely lying in the plaintiff's lot stagnant, but not in repose as in an interim of transit which had not terminated. The court further stated:
In [loading the cargo onto the trucks] the plaintiff consulted its own convenience to expedite the delivery of goods. * * * When its chauffeurs reported early Monday morning to begin their carriage in tractors and trailers already loaded; * * * the goods were in storage * * * not "in transit." [47 N.Y.S.2d at 545]
In Mayflower Dairy Products v. Fidelity-Phenix F. Ins. Co., supra, plaintiff's truck, loaded with merchandise, was left on plaintiff's premises overnight to await delivery the next day. During the night the truck was stolen and plaintiff started suit under a transportation insurance policy. The court held that "in transit" could not include a period commencing on the evening of one day when for its own convenience the seller, in its own premises, loaded the goods on its truck, and extending then on through the night during which the loaded truck was stored on such premises, on to that time in the morning of the next day when the truck was manned and proceeded on its way to the point of destination. Such a situation, the court determined, implies storage.
Plaintiff, in support of its position, relies strongly on the case of J.G. Ries & Sons, Inc. v. Automobile Ins. Co., 121 N.J.L. 493 (E. & A. 1938). There plaintiff's truck was loaded with pig tin at a Brooklyn pier; the cargo's destination was Bloomfield, New Jersey. The loading was completed at an hour too late for delivery that day, and so the truck with its load was driven to plaintiff's garage in Newark for delivery on the following day. Overnight, the pig tin was stolen. The applicable policy provision contained a warranty *541 requiring the truck, while carrying merchandise, to be guarded by two men. The lower court decided that since the truck, when its cargo was stolen, was being stored overnight, it was not "carrying" merchandise within the purview of the policy. The Court of Errors and Appeals reversed, stating:
The fact that the insured, for the more effective performance of its duty as carrier, interrupted the course of its vehicle and housed it * * * overnight does not, in our opinion, change his position as a common carrier * * * The act of transportation was begun at the pier * * * if the men in charge had left the truck in the highway while they obtained lodging * * *, or even at midday when they went to a dining room for a meal, could it be said that because the truck was not in motion it was not carrying the goods which it was in the interrupted process of transporting? [at 497]
The above case differs radically from the instant one. In Ries the loaded truck proceeded from Brooklyn to Newark. Were it not for the late hour, there would have been a direct delivery from the pier to the consignee at Bloomfield. The truck was garaged overnight only to faciliate the "interrupted" process of delivery. Upon the loading of the truck in Brooklyn there was then immediate and substantial movement toward the destination, and it was with this in mind that the court held that act of delivery was begun at the pier. The court by no means indicated its readiness to hold that, were the truck stationed at the pier overnight, or moved from one part of the loading platform to another and then stationed overnight for delivery the next day, the act of delivery would still have begun at the pier. Moreover, applying the present facts to the Ries holding, could the stopping of the plaintiff's truck ten feet from the starting point along the loading platform, a travel time of seconds, and there leaving it for over a day, be considered a mere "interruption of delivery"? This court thinks not.
Plaintiff also offers Brammer Corp. v. Holland-America Insurance Co., 34 Misc.2d 337, 228 N.Y.S.2d 512 (Sup. Ct. 1962), as further authority for its contentions. There *542 the goods insured were manufactured in plaintiff's warehouse and moved to the shipment area of the building where they were placed in the hands of an independent trucker for delivery. While they were still in the warehouse, the goods were damaged and plaintiff sought to recover under a policy insuring his goods while in transit. The policy stated that insurance attached from the time the goods left the warehouse. Construing the policy, the court determined that
The loading of the trucks within the building does not constitute "in transit" until there is a movement out of the building. [at 513]
It is urged in the present case that since the insured goods were removed from the building onto the truck, there was a movement out of the building, and thus the "in transit" period commenced. Plaintiff, however, overlooks the fact that the policy in Brammer specifically provided that the insurance attached when the goods left the building. The holding was confined to its own factual situation, determined by the definitions in that warehouse-to-warehouse policy. That holding should not and cannot be indiscriminately extended.
Admittedly, all the above cited cases are helpful as guidelines, but none of them involved the precise factual situation presented here. Thus, the court's decision must depend solely upon the instant fact pattern. Home Insurance Co. v. F. & F. Clothing Co., supra, In the final analysis, the outcome of such a case as this should be determined not by precise semantic shadings of terms of art, but by a commonsense appraisal of the overall situation. Ben Pulitzer Creations, Inc. v. Phoenix Ins. Co., 47 Misc.2d 801, 263 N.Y.S.2d 373 (Sup. Ct. 1965). Accordingly, it is this court's decision that the loading of the truck and its subsequent movement to another location adjacent to the loading platform, as preparation for actual delivery, did not render the truck and its contents "in transit" within the meaning of *543 the policy provisions. To be considered "in transit", cargo must be in the process of movement toward its destination; the act of delivery must have begun. Although plaintiff testified that the truck was "moved," the movement was one of only ten feet along the loading platform; the truck did not leave the platform area. This movement did not initiate the delivery, nor was it one toward its destination. It would seem that the purpose of moving the truck was to clear the loading platform, not to start delivery. Plaintiff's witness testified that the drivers, when they are about to begin delivery, always obtain an invoice at the plaintiff's office and take it with them on their delivery. No invoice was picked up for the stolen shipment and none was to be picked up until the following Monday. This further indicates that there was no intent to commence delivery until Monday. The loading of the truck on Saturday was for plaintiff's convenience, and the truck, in its supine position over the weekend, was stored, not in transit.

II

Did the theft occur while the merchandise was located on premises occupied by plaintiff?
The land upon which the truck was stored at the time of the theft was a paved driveway, contiguous to the loading platform at plaintiff's building. Although plaintiff asserts that it leased only the buildings and not the driveway, it must be pointed out that plaintiff made full use of the driveway, especially that portion adjacent to the loading platform. Indeed, plaintiff could not have loaded its trucks from the platform unless they were positioned in the driveway. There was testimony to the effect that although other tenants in the building complex had made infrequent use of the driveway, plaintiff recently had exclusive enjoyment of it.
It is clear that, at the least, an easement by necessity over the driveway was created in favor of plaintiff. Easements by necessity arise by virtue of inference or implication *544 of an intent implied from the facts surrounding the primary conveyance. The "necessity" which may give rise to an easement does not necessarily connote that without an easement the dominant tenant could have no beneficial enjoyment of his lands whatsoever, and the word should be understood as meaning reasonably necessary for the convenient, comfortable or beneficial enjoyment. Tidewater Oil Co. v. Camden Securities Co., 49 N.J. Super. 155 (Ch. Div. 1958). Everything that belongs to the demised premises or is used with and appurtenant to them and is reasonably essential to their enjoyment passes under a lease as incident to them, unless especially reserved. Rayhertz Amusement Corp. v. Fulton Improvement Co., 124 N.J. Eq. 121 (Ch. 1938). A lease of a particular part of a building gives the lessee no rights outside of such part, except such as were intended to be included as appurtenant to the beneficial enjoyment thereof, or such as it was manifest had been designed and appropriated for the benefit of the leased premises. Owsley v. Hamner, 36 Cal.2d 710, 227 P.2d 263, 24 A.L.R.2d 112 (1951). The latter case held that the rights such as the easements there involved constituted an implied part of the lease. Moreover, if necessary means of egress to the demised premises are not shared by any other tenant and control thereof is not reserved by the landlord, such means of egress are regarded as part of the leased premises (emphasis supplied). Grochowski v. Stewart, 53 Del. 330, 169 A.2d 14 (1959).
Whether the use of particular areas apart from the demised premises is an appurtenance to the leasehold is primarily a question of fact. Olson v. Hoffman, 65 Ill. App.2d 87, 213 N.E.2d 68 (App. Ct. 1965). In the present case the use of that portion of the driveway area adjacent to plaintiff's loading platform was necessary for the beneficial enjoyment of the leased premises. And although the testimony could negate a finding that there was always exclusive enjoyment and control by plaintiff and that, consequently, the area might be deemed a part of the leased premises, it cannot be disputed that plaintiff's right to the area passed *545 under the lease to afford it unlimited and full use. The area in question was an appurtenance to plaintiff's leasehold.
Realizing that the word "occupy" is variously defined as meaning to possess, to have in possession or use, to use, 67 C.J.S. Occupy, at 83; United States v. Burleson, 127 F. Supp. 400 (D.C.E.D. Tenn. 1954), this court holds that the fact that plaintiff had the right to the use of the area, that it did actually make exclusive and continuous use of it, and that the area was of such a nature as to substantially lessen the value of plaintiff's leasehold interest were the plaintiff prohibited from its use, all show that plaintiff did "occupy" the area within the meaning of the policy.
Although some decisions have stated that "occupancy" generally refers to actual possession to the exclusion of everyone else from enjoyment, Paulson v. Rogis, 247 Iowa 893, 77 N.W.2d 33 (1956), I feel that, in light of the particular circumstances presented here, the conclusion that the plaintiff did occupy the area is warranted.
Judgment for the defendant.