DELESON STEEL COMPANY, INC., PLAINTIFF, v.
THE HARTFORD INSURANCE GROUP, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided March 2, 1977.

*Messrs. Jones, Cuccio & Klinger,* attorneys for plaintiff (*Mr. Gary S. Redish,* of counsel).

*Messrs. Lum, Biunno & Tompkins,* attorneys for defendant (*Mr. Steven E. Brawer* of counsel).

MORRISON, J. C. C., Temporarily Assigned. This case comes before the court on cross-motions for summary judgment on

the issue of insurance coverage. Plaintiff Deleson asserts that its loss was covered under its theft and embezzlement policy written by defendant Hartford. Hartford denies coverage under the terms of the policy. The parties are fairly in accord as to the factual setting of the case. Therefore, solely for the purposes of these motions, we find the following facts:

In August 1975, plaintiff was engaged in the construction of the structural steel framework for an elementary school in Newark. Deleson's job superintendent for this project was Mr. John Speer, Sr. One of Speer's duties on August 22, 1975 was to transport the payroll from plaintiff's office in Englewood to its employees working on the job site. It appears from his affidavit that Speer had performed this "paymaster" function with some regularity during his 25 years of employment with Deleson.

On August 22, 1975 Speer arrived on the job site at about 7:45 A.M. (this was about 45 minutes prior to the scheduled arrival of the employees whose work day began at 8:30 A.M.). He parked his Deleson van on the site, placed the payroll under the driver's seat and locked the doors. Speer then proceeded to engage in some minor supervisory functions, e. g., conversing with the operating engineer who was responsible for the preliminary oiling and starting of the machinery and equipment to be used that day. This sojourn lasted some 30 to 35 minutes, as Speer testified he returned to the van sometime between 8:15 and 8:30 A.M. Upon his return he discovered that a window had been broken and the payroll stolen.

The theft was subsequently reported to the Newark police and a claim duly made to Hartford under the policy that is now before this court. Defendant denied the claim on the basis that Speer was not in the process of "conveying" the payroll at the time of the theft. Thus, it is this court's responsibility to determine the coverage provided.

The applicable policy provision is found under the heading "Paymaster Broad Form Coverage." It reads as follows:

To pay for loss of payroll funds and other money and securities by actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger or any armored motor vehicle company, or while within the living quarters in the home of any messenger.

The term "messenger" is defined in the policy as "the Insured or a partner of the Insured or any Employer who is duly authorized by the Insured to have the care and custody of the insured property outside the premises."

We must first concern ourselves with Speer's potential "messenger" status vis-á-vis the policy. It is undisputed that Speer was in the employ of the insured during this occurrence. However, there is some question as to whether the payroll was in his "care and custody" at the time of the theft.

A careful reading of the policy reveals that these terms are undefined. In situations such as this, our law is clear:

In the absence of such definition the term must be given its plain, ordinary and popular meaning, and must be interpreted as understood by the average insured when purchasing the policy. *Wilkinson v. Providence Washington Insurance Co.*, 124 *N. J. Super.* 466, 469 (Law Div. 1973).

"Care" is commonly defined as "charge or supervision"; "custody" is defined as "immediate charge and control exercised by a person." *Webster's Seventh New Collegiate Dictionary* (1972).

We find that the payroll was under Speer's "supervision" and "control" when stolen, even though it was left unattended, in that Speer locked the van, placed the keys in his pocket and remained near the place where the van was parked. See *Atlanta Tallow Co. v. Fireman's Fund Ins. Co.*, 119 *Ga. App.* 430, 167 *S. E.* 2d 361 (App. Ct. 1969). Therefore, we hold that Speer qualified as a "messenger" under the policy by virtue of his being an employee of the insured and by his having "care and custody" of the payroll.

The issue now presented is a narrow one — was the payroll that was in the care and custody of plaintiff's messenger

"being conveyed" at the time of the theft? This court acknowledges the excellent briefs submitted by the parties and recognizes that the solution to this problem is not easily achieved.

At the outset, we note that defendant places heavy reliance upon what it contends are the two leading New Jersey cases in this area: *Trad Television Corp. v. Hartford*, 35 *N. J. Super.* 36 (1955) and *Boonton Handbag Co. v. Home Ins. Co.*, 125 *N. J. Super.* 287 (1973). This court has carefully considered these two cases and finds that they are factually irreconcilable with the case at bar.

In *Trad* we have the same issue under similar policy language. However, *Trad's* anomalous factual setting bars any analogy to this case. On a Friday Trad, the corporation's vice-president, took money that was to be delivered to a fellow corporate employee. These funds were to be expended by the intended recipient the following Tuesday. In the interim Trad was detoured to an impromptu birthday celebration at a local tavern, where the money vanished. The court held that Trad's possession of the money was that of a corporate president; thus, no bailment by a messenger existed. Furthermore, the court went on to say, (35 *N. J. Super.* at 41), "indeed the transportation, the contemplated purpose of which was intended to be performed on or before the following Tuesday, had not begun."

In the *Boonton* case the policy protected against loss of goods and it contained "in transit" language as opposed to the "while being conveyed" language that appears in the policy before this court. The goods had arrived at their destination and were being stored overnight due to the tardiness of the delivering driver. The theft occurred sometime that night or early the next morning. The court held (125 *N. J. Super.* at 290) that under these circumstances, "a reasonable insured would not look to an 'in transit' policy for recompense for this loss, but rather would reasonably expect to be compensated under a policy insuring against loss by

theft from premises." Thus, we are left with no controlling law in our State.

This court must once again look to the common definition of a term that is not expressly defined within an insurance policy. *Wilkinson, supra.* We turn to the "common sense" definition, as it was labelled by the Nevada Supreme Court, for guidance on the ordinary usage of "convey":

> We conclude the word "conveyed" includes those periods or instances of stops or nonmotion reasonably necessary to accomplish the insured operation as contemplated by the parties. Examples of those periods or instances of nonmotion would include stops for traffic signals, necessary repairs or fuel, pickups or deliveries, and the like. *Home Indemnity Co. v. Desert Palace Inc.*, 86 *Nev.* 234, 468 *P.* 2d 19 (1970).

This court recognizes that to "convey" an object connotes more than uninterrupted, programmed movement from point A to point B.

Considering all the case authority from other jurisdictions mustered by the respective parties, we perceive a pattern in the holdings of these "messenger" cases. Courts have allowed recovery under similar policies when the respite is merely a minor deviation from a reasonable course in accomplishing the assigned mission. For example, in *Atlanta Tallow Co., supra,* a messenger, while on the return trip after cashing his employer's check, stopped for lunch and locked the funds in the glove compartment. Upon returning to the car, the messenger discovered that the money had been stolen. The court held that the funds were still being "conveyed" or "transported" despite this luncheon stopover. Underlying the court's decision was its determination that the respite was reasonable in light of all the surrounding circumstances.

We contrast the *Atlanta Tallow Co.* case with *Trad, supra,* wherein our Supreme Court laid heavy emphasis on the fact that the alleged "messenger" was engaged in social activity (a birthday party at a tavern) when it denied recovery.

Generally speaking, the courts that have considered this problem appear to have analyzed it under a logic very much

akin to that underlying the agency doctrine of "frolic and detour." *Riley v. Standard Oil Co.*, 231 *N. Y.* 301, 132 *N. E.* 97 (Ct. App. 1921). If an agent removes himself from conducting his principal's business and engages in his own personal affairs, separate and distinct from those of his principal, then the law holds the agent solely accountable for his injury producing acts and suspends the principal's obligations under *respondeat superior*. This same process of focusing on the agent's conduct in light of the scope of anticipated conduct seems to pervade the cases dealing with messenger policies.

This court holds that in those instances in which a messenger is engaged in a "frolic of his own" — that is, he has substantially deviated from the reasonable course of carrying out his delivery — then the insured employer cannot look to his insurer under a policy similar to this "Paymaster Policy" for indemnification of any theft loss. This seems to be in accord with our public policy of meeting the reasonable coverage expectations of the insured. See *Gerhardt v. Continental Ins. Co.*, 48 *N. J.* 291, 296–297 (1966); *Bryan Constr. Co., Inc. v. Employers' Surplus Lines Inc. Co.*, 60 *N. J.* 375 (1972).

In applying these principles to the present case we first consider all the surrounding circumstances involved in the purchase of this coverage: (1) the nature of plaintiff's structural steel business and the fact that employees would oftentimes be out in the field, commencing construction on vacant lots; (2) the diverse functions of the employee who was delegated the responsibility for dispensing of payroll and his practices throughout the years in performing this function, and (3) the fact that "conveying payroll" for plaintiff Deleson meant transporting money from its main office to the hands of the men on the job site.

Next, we look to the particular facts encompassing this loss: (1) the van's being locked and located on the job site; (2) the physical proximity of Mr. Speer to the van transporting the funds; and (3) the fact that Speer was not

engaged in a personal social outing or frolic at the time of the loss; rather, he was close to the locus for distribution and he was engaged in his employer's affairs.

Considering all of the above factors in light of the reasonable "coverage expectations" standard, this court holds that the loss in question is within the coverage purchased by the plaintiff Deleson from the defendant Hartford.

Therefore, the motion of Hartford for summary judgment is hereby denied; the cross-motion of Deleson for summary judgment is granted.