**FIREMAN'S FUND INSURANCE COMPANY, Plaintiff,**

v.

**SERVICE TRANSPORTATION COMPANY, Defendant and Third-Party Plaintiff,**

v.

**PAUL ARNOLD ASSOCIATES, INC., Third-Party Defendant.**

Civ. No. B–77–2003.

United States District Court, D. Maryland.

March 13, 1979.

William C. Stifler, III, and Niles, Barton & Wilmer, Baltimore, Md., for plaintiff.

Joshua R. Treem, and Weinberg & Green, Baltimore, Md., for defendant and third-party plaintiff.

Louis G. Close, Jr., and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for third-party defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This action for declaratory judgment is presently before the court on cross motions for summary judgment. The parties have stipulated the facts and briefed the issue and there is no need for a hearing under Local Rule 6.

The facts are undisputed. Service Transportation Co., the defendant, is a New Jersey trucking company which operates a ter-

minal at 252 South Kresson Street in Baltimore, Maryland. Service is insured by the plaintiff, Fireman's Fund Insurance Company.

On or about June 9, 1977, four Service Transportation trailers transported bags of Nicaraguan coffee from New York to the South Kresson Street terminal in Baltimore. The coffee was shipped "in bond"; that is, under seal, since it had not cleared customs in New York. While the coffee was being held in Baltimore, United States Customs Officials inspected it and determined that there was no duty owed. Inspectors from the FDA examined the coffee and found first that it was infested with insects and later that it was possibly of substandard quality, containing excessive amounts of dirt and grit. The FDA ordered the coffee to be held at the terminal until further notice. Service duly notified the owner, J. Aron & Co., Inc., a New Orleans firm, that the coffee was being held in Baltimore.

Some three weeks later, on June 29, 1977, before any action was taken by the FDA, the coffee was severely damaged by a fire at the terminal. Service Transportation promptly notified its insurer of the loss. The owner of the coffee, J. Aron & Co., Inc., brought an action against Service Transportation in this court. The insurance company has taken the position that its policy does not cover the damage to the coffee, and has brought this action for a determination to that effect.

The insurance policy in question provides as follows:

This policy covers the liability of the insured for loss or damage to lawful goods and merchandise while in the custody or control of the insured (and while in the custody of connecting carriers) in the ordinary course of transit within the contiguous states of the United States. . . .

Stipulation, Exhibit 2. The only issue is whether the coffee was "in the ordinary course of transit" at the time of the fire.

Since this is a diversity case, the threshold question is what state's law controls the interpretation of the contract. The policy is silent in this respect. Nevertheless, the contract was "accepted" by Service Transportation in New Jersey, and the parties do not contend that any law other than that of New Jersey should apply.[1] This court is satisfied that New Jersey law controls the interpretation of the disputed language in the insurance contract.

Fireman's Fund contends that when the coffee came to rest in Service's Baltimore terminal, it passed out of "the ordinary course of transit" as specified in the insurance policy. The insurer cites as authority *Boonton Handbag Co., Inc. v. Home Insurance Company,* 125 N.J.Super. 287, 310 A.2d 510 (App.Div. 1973), affirming a lower court determination that certain goods were not "in transit." In that case, an employee of the insured left the insured's plant, picked up a shipment of handbags in New York and returned to the insured's plant. He arrived too late to unload, so he left the truck locked on the premises overnight. The truck and its contents were stolen. The court adopted the principle that:

Property is considered in transit when it is moving from one location to another. This does not exclude temporary stops,

---

1. This court is bound by the choice-of-law rules of the Court of Appeals of Maryland. *Klaxon Company v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Maryland rule is that in contract cases, the law of the state in which was performed the last act necessary to the formation of the contract controls. *Grain Dealers Mutual Insurance Co. v. Van Buskirk,* 241 Md. 58, 215 A.2d 467, 471 (1965); *Haines v. St. Paul Fire and Marine Insurance Co.,* 428 F.Supp. 435, 437 (D.Md.1977). The contract in the instant case specified that the policy would not become binding until countersigned by a duly authorized agent of the issuing company. Accordingly, the place of countersigning would be the place of making the contract. *Ohio Casualty Insurance Co. v. Pennsylvania National Mutual Casualty Insurance Co.,* 238 F.Supp. 706, 708 (D.Md.), *aff'd per curiam,* 352 F.2d 308 (4th Cir. 1965). There is, however, on the face of the instant insurance contract, no apparent signature of any representative nor any indication in what place the contract was countersigned.

incidental delays, or some deviation from the planned route of travel. [citation omitted.] However, when the property to be transported has reached its destination it is generally no longer considered in transit.

310 A.2d at 511, *quoting Lariviere v. New Hampshire Fire Insurance Co.,* 105 N.H. 73, 193 A.2d 13, 15 (Sup.Ct.1963).

Service Transportation contends that, even under the formulation adopted in *Boonton Handbag,* the coffee was only temporarily delayed in Baltimore by reason of the FDA's order: it had not reached the consignee, so it was still "in transit." The insured invites the court's attention to the New Jersey case of *Deleson Steel Company, Inc. v. Hartford Insurance Group,* 148 N.J. Super. 336, 372 A.2d 663 (1977), a "messenger" case, in which the issue was whether a payroll in the custody of the paymaster was "being conveyed" at the time of its theft. In that case, the plaintiff's job superintendent transported the construction company's payroll from the company office to a job site. He arrived some 45 minutes before the employees were to report for work, placed the payroll under the driver's seat of the company van, locked the van and proceeded to engage in some minor supervisory functions. Some 30 to 35 minutes later, he discovered that the van had been broken into and the payroll abstracted. By analogy to "frolic and detour" cases, the court considered the context in which the payroll was being transported and found that the payroll was being "conveyed" and that, accordingly, the theft was covered by the insurance policy. That case, limited as it expressly is to its own facts, throws little illumination upon the instant case. It in no way discredits the "destination" test announced in *Boonton Handbag.* Similarly, the other New Jersey cases cited by the insured, *Den Gre Plastics Co., Inc. v. Travelers Indemnity Co.,* 107 N.J.Super. 535, 259 A.2d 485 (1969), and *J. G. Ries & Sons, Inc. v. Automobile Insurance Co. of Hartford, Conn.,* 121 N.J.L. 493, 3 A.2d 610 (App. 1939), do not elucidate the applicable test. In *Ries,* the court found that a loaded truck which had stopped overnight en route was "carrying" goods and therefore covered. In *Den Gre Plastics,* the issue was whether "transit" had begun when a truck was loaded and moved ten feet. All these cases show is that which has been obvious from the start: that the determination whether property is "in transit" is a common-sense issue, one dependent on the peculiar facts and circumstances of the individual case.

It appears to be the position of the defendant that since it was undisputedly in custody and control of the coffee shipment, and since it is a common carrier, then the goods should be found to be in some manner of "constructive transit." This court finds no support for such a construction in New Jersey law. Under the very terms of the policy at issue, "custody" and "transit" are two distinct issues, each of which must affirmatively be shown in order to establish coverage.

"Custody" being undisputed, "transit" alone is at issue here. Under the formulation of *Boonton Handbag, supra,* 310 A.2d at 511, goods continue in transit notwithstanding temporary delays until they reach their destination. The critical question in this case is whether the South Kresson Street terminal in Baltimore was the "destination" of the coffee. This court finds that it was, and that accordingly, on the date of the fire, the coffee was no longer "in the ordinary course of transit."

The pleadings filed in this case and its companion, *J. Aron & Co., Inc. v. Service Transportation Co.,* Civil No. B–77–1542, indicate that Service's contract with the owner of the coffee was to ship it from New York to Baltimore and no further. *See,* for example, Service Transportation's answer to the amended complaint of J. Aron & Co., Inc., Civil No. B–77–1542, Court Paper # 9 at ¶ 5:

.  .  .  Defendant admits that bags of coffee were delivered to it for shipment *to Baltimore* and were shipped in four (4) trailers *to Baltimore.*

(Emphasis added.) This is not a case where, for example, Service temporarily stopped its trucks at the Baltimore terminal

en route to J. Aron & Co.'s headquarters in New Orleans. Rather, it appears to have been the understanding of the parties that the coffee would be shipped to Baltimore and from there, the owner or his agent would arrange for its subsequent distribution. While it may be true that the coffee's ultimate distribution was delayed owing to the action of the FDA, that does not alter the fact that as between these parties, Service Transportation's South Kresson Street terminal was the destination of the coffee. Once the coffee reached the terminal, it was no longer "in the ordinary course of transit."

Service Transportation argues further than an insurance contract ought to be construed in light of the reasonable needs and expectations of the insured, and that all ambiguities should be resolved against the drafter of the policy. The parties agree that Service's prior insurance contract (Stipulation, Court Paper 20, Exhibit # 1, ¶ 3) would have covered the damage in this case. It is the insured's contention that it contemplated a similar all-risks policy with Fireman's Fund. Indeed, the agent who supplied the Fireman's Fund policy characterized it as a "duplication" of the expiring policy. Exhibits C and E to Service's answer, counterclaim and third party complaint, Court Paper 4. The agent's assurances notwithstanding, it appears upon close examination that the two policies are not equivalent. The earlier policy insured Service against liability "as carrier, forwarder/warehouseman or in a similar capacity, under bill of lading, receipt, or other contract of bailment or affreightment or other agreement" (Stipulation, Court Paper 20, Exhibit 1, ¶ 3). The express provision of the policy at issue insures only against liability "for loss or damage to lawful goods and merchandise while in the custody or control of the insured . . . in the ordinary course of transit."

Although it is true under New Jersey law that an insurance contract is to be construed in light of the reasonable coverage expectations of the insured, *Bryan Construction Co., Inc. v. Employers' Surplus Lines Insurance Co.*, 60 N.J. 375, 290 A.2d 138, 140 (1972), that is not to say that this court is obliged or empowered to declare that a policy which insures against risks to one in the capacity of both carrier and forwarder/warehouseman is the same as a policy which insures losses "in the ordinary course of transit." This court cannot rewrite the insurance policy. *Boonton Handbag, supra,* 310 A.2d at 512.

Finally, although it is a venerable rule of contract construction that ambiguities are to be construed against the drafter, this court finds no ambiguity in the wording of the contract at issue. It simply did not provide coverage for damage to goods which had reached their destination.

Accordingly, it is this 13th day of March, 1979, by the United States District Court for the District of Maryland,

ORDERED that the Clerk of the Court enter a summary declaratory judgment in favor of Fireman's Fund Insurance Company separately pursuant to Rule 58, Fed.R. Civ.P. as follows:

It is the judgment of this court that plaintiff Fireman's Fund Insurance Company has no obligation to defend or to indemnify its insured, defendant Service Transportation Company, under policy No. MTB–289–3481 in connection with litigation initiated in this court, Civil No. B–77–1542, arising out of damage to coffee alleged to have occurred as a result of a fire at the Service Transportation Company's terminal at 252 South Kresson Street, Baltimore, Maryland, on or about June 29, 1977. This judgment does not extend to allegations of further loss or damage alleged to have occurred to the same coffee shipment as a result of subsequent actions taken by Service Transportation Company at the behest of the owner, J. Aron & Co., Inc., after the fire of June 29, 1977. Specifically, the finding of this court that at the date of the fire the coffee was not "in the ordinary course of transit" does not foreclose any allegation that the coffee or what remained of it may have been later placed in transit.

It is FURTHER ORDERED that the Clerk of the Court enter judgment denying

Service Transportation Company's motion for summary judgment.